**Affirm and Opinion Filed September 27, 2021**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00304-CV**

**JORGE LUIS TREVINO AND J.L. TREVINO & ASSOCIATES, PLLC,**
**Appellants**
**V.**
**JOSE JIMENEZ, Appellee**

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-63808**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Carlyle
Opinion by Justice Carlyle

In this interlocutory appeal, licensed professional engineer Jorge Luis Trevino and his engineering firm, J.L. Trevino & Associates, PLLC, (collectively, Trevino) challenge the trial court's order denying their motion to dismiss for an inadequate certificate of merit pursuant to Texas Civil Practice and Remedies Code section 150.002. *See* TEX. CIV. PRAC. & REM. CODE § 150.002. We affirm the trial court's order in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Background**

In mid-2018, Jose Jimenez (Mr. Jimenez) hired ABC Building Design, LLC to design and plan renovations and additions to his home. On October 7, 2020, Mr. Jimenez filed this lawsuit against ABC; its registered agent, Hector Jimenez; Trevino; and builders Palacios Construction and P.O. Construction. Mr. Jimenez asserted causes of action against "the Defendants" for negligence, negligent misrepresentation, violation of the Texas Deceptive Trade Practices–Consumer Protection Act, fraud, and breach of contract.

According to Mr. Jimenez's original petition, (1) "the Defendants entered contracts with the Plaintiff and failed to properly design, engineer, and construct renovations and additions to the Plaintiff's home"; (2) ABC "promised to work with a professional engineer who would aid in the development of the design and plans, and who would approve the plans"; (3) ABC "utilized Jorge L. Trevino, a registered professional engineer, and/or Jorge Trevino's company, J.L. Trevino & Associates, PLLC, for the engineering required by the renovation and additions to the Home"; (4) the plans "were approved by Jorge Trevino," but "did not contain the proper dimensions for the existing structure and additions, and the foundation plan for the new addition to the Home was not properly planned, engineered, or constructed leaving the addition structurally unsound"; (5) "[t]he designs, specifications, engineering, and plans prepared by ABC, Jorge Trevino, and/or J.L. Trevino & Associates were insufficient and deficient for the renovations and additions undertaken for the Home"; (6) "[t]he defects in these plans breached the duties owed

to the Plaintiff and proximately caused damages to the Plaintiff"; (7) "Defendants negligently misrepresented the characteristics, qualities, and benefits of the plans, engineering and construction work for the renovation of and additions to the Plaintiff's Home" and "concealed the defects in the plans, engineering, and construction"; and (8) "ABC, Hector Jimenez and Jorge Trevino represented to the Plaintiff that they would inspect and supervise the work on the Home as it occurred," but "they failed to properly carry out these duties, and when they discovered errors, they concealed them from the Plaintiff." The petition also asserted Mr. Jimenez "had no notice to begin any investigation into the construction process until, at the earliest, October 9, 2018, and did not discover or know of the defects until well after this date."

A five-page "Affidavit of Floyd Oliver Jr., PE" was attached to the original petition. The affidavit described Mr. Oliver's engineering background and the documents he had reviewed in preparing the affidavit. Additionally, Mr. Oliver's affidavit stated:

> 7. In connection with the remodeling and renovation, ABC prepared plans for the demolition of existing portions of the Home, blueprints and plans for the renovations and additions to the existing two-story home, and blueprints and plans for the additional living space above the existing carport.
>
> 8. An evaluation of the plans reveals that they were not sufficient for the renovation and addition project undertaken on the Home. The plans included information about the existing structure, additions to the foundation, and additions to the roof.

9. ABC included a Foundation Plan specifying the design of piers, depth of piers, and placement of piers for the support of the second story addition above the carport. This Foundation Plan was not reviewed, but was approved, and stamped by a registered professional engineer named Jorge Luis Trevino (License No. 5645 in the State of Texas). The Foundation Plan called for the use of bell bottom piers, set to a ten foot minimum depth, with a three foot base and reinforced with steel. At the lateral edge of the carport on the (approximately) South East side, a reinforced, structural, load bearing beam measuring 12 inches by 24 inches (the "Structural Foundation Beam") would be added in order to support three wooden columns that would be installed on top of it in order to support the new addition above the carport.

10. ABC included a Roofing Framing Plan that was also reviewed, approved, and stamped by Mr. Trevino. This plan contained specifications for wind bracing designed for 110 miles per hour. Detailed drawings called the [sic] use of Simpson LSTA15 fifteen inch, twenty gauge galvanized straps to achieve the load and wind ratings called for by the design.

Trevino filed a motion to dismiss the complaint for failure to comply with section 150.002's "certificate of merit" requirement. *See* TEX. CIV. PRAC. & REM. CODE § 150.002. Trevino contended Mr. Oliver's affidavit "fails to state what error or omission was committed by Trevino and fails to contain any factual basis for such an allegation."

Mr. Jimenez filed a response to the motion to dismiss, arguing in part that no certificate of merit was needed because Trevino "did not provide any professional engineering services to Plaintiff." The response contended:

Hector Mario Jimenez, owner of the ABC design firm, admitted to the Plaintiff that Mr. Trevino did not prepare, review, or approve the plans. Instead, Mr. Trevino simply allowed ABC to stamp and sign off on plans such as those provided to the Plaintiff without ever reviewing them.
. . . .

–4–

. . . [T]he Trevino Defendants inspected and monitored the progress and quality of the renovation work being undertaken by contractors at Plaintiff's home. . . . [T]he Trevino Defendants were sent to the site by ABC design studio as part of ABC's promise to manage the renovation project. Consequently, the Trevino Defendants held the role of a third-party inspector . . . .

According to the response, "Contrary to Defendants' motion, a certificate of merit is not needed for the Trevino Defendants' role in (1) providing inspection services during the renovation of the Plaintiffs home; (2) concealing and misrepresenting the errors made by contractors or subcontractors during the renovation of the Plaintiffs home; and (3) allowing its professional engineering stamp to be used by non-engineers." Alternatively, Mr. Jimenez contended Mr. Oliver's affidavit "met the requirements for a certificate of merit by providing a detailed and descriptive affidavit demonstrating that the Plaintiff s lawsuit is not frivolous." The attachments to the response included a February 9, 2021 affidavit of Mr. Jimenez in which he stated, among other things, that Hector Jimenez told him in October 2018 that Trevino "had not reviewed or stamped the plans."

Following the trial court's March 18, 2021 denial of Trevino's motion to dismiss,[1] Trevino timely filed this interlocutory appeal.[2] *See id*. § 150.002(f). Mr. Jimenez's appellee brief in this Court includes an appendix containing a "First Amended Original Petition" with an attached "Supplemental Affidavit of Floyd

---

[1] The appellate record shows no hearing on the motion to dismiss.

[2] In an April 22, 2021 docket equalization order, the Texas Supreme Court transferred this appeal from the First District Court of Appeals in Houston to this Court.

Oliver Jr., PE." Those documents indicate they were first filed in the trial court on May 28, 2021—nearly a month after the clerk's record in this appeal was filed and several weeks after Trevino filed its opening appellate brief.[3] Mr. Jimenez bases substantial portions of his appellate argument on those May 28, 2021 documents, which contain revised provisions regarding Trevino.[4]

## Standard of review and applicable law

We review a trial court's order on a section 150.002 motion to dismiss for an abuse of discretion. *CBM Eng'rs, Inc. v. Tellepsen Builders, L.P.*, 403 S.W.3d 339, 342 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see Downer v. Aquamarine*

---

[3] The appellate clerk's record has not been supplemented to include those May 28, 2021 documents. *See* TEX. R. APP. P. 34.5(c).

[4] Mr. Jimenez asserts in his appellate brief that his May 28, 2021 first amended original petition "did not add or remove claims against Appellants," but rather "clarif[ies] that as to Appellants, Plaintiff's complaints only arise from the misuse of their professional engineering stamp and direction to contractors to conceal errors in the construction of the foundation." The first amended original petition states, among other things,

> 15. Plaintiff received the plans and specifications from Mr. Hector Jimenez and ABC, saw the application of Mr. Trevino's professional engineering seal, and believed and relied upon the fact that the plans and designs had been reviewed and approved by a registered professional engineer. In fact, the designs and specifications that Plaintiff Jose Jimenez received had not been reviewed or approved by Mr. Trevino or J.L. Trevino & Associates.
> 16. Mr. Hector Jimenez and ABC prepared all the plans without any review or engineering work by Mr. Trevino or J.L. Trevino & Associates. . . . In exchange for the unfettered and unsupervised use of Mr. Trevino's professional engineering seal, Mr. Hector Jimenez and/or ABC Building Design paid Mr. Trevino and J.L. Trevino & Associates a fee for each project.

Also, the first amended original petition, unlike the original petition, asserts breach of contract only against the defendants other than Trevino.

In the May 28, 2021 supplemental certificate of merit, Mr. Oliver states in part "[n]either the Foundation Plan nor the Roofing Framing Plan given to Mr. Jose Jimenez were reviewed or approved by a registered professional engineer" and Trevino "allow[ed] a non-engineer (ABC) to use Mr. Trevino's engineering stamp and thereby misrepresent that plans and specifications had been reviewed by a licensed engineer, when in fact they had not."

*Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985) (trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles). To the extent we must interpret a statute, that aspect of our review is performed de novo. *Pedernal Energy, LLC. v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 491 (Tex. 2017). "To determine whether and how § 150.002 applies, we consider the live pleadings when the trial court ruled on the motion to dismiss." *Jennings, Hackler & Partners, Inc. v. N. Tex. Mun. Water Dist.*, 471 S.W.3d 577, 581 (Tex. App.—Dallas 2015, pet. denied); *TDIndustries, Inc. v. Rivera*, 339 S.W.3d 749, 753 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Section 150.002 provides that in an action "for damages arising out of the provision of professional services by a licensed or registered professional," the claimant must file with the complaint an affidavit of a third-party licensed or registered professional. TEX. CIV. PRAC. & REM. CODE § 150.002(a). The affidavit must "set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the . . . professional in providing the professional service." *Id*. § 150.002(b). If the claimant fails to file an affidavit meeting these requirements, the trial court must dismiss the claims against the professional. *Id*. § 150.002(e). "This dismissal may be with prejudice." *Id*.

Section 150.002(e) dismissal serves "the same purpose" as the expert report requirement of the medical liability statute in civil practice and remedies code

Chapter 74, "to deter meritless claims and bring them quickly to an end." *CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 390 S.W.3d 299, 301 (Tex. 2013). Section 150.002 "reflects a legislative goal of requiring merely that plaintiffs make a threshold showing that their claims have merit." *M-E Eng'rs, Inc. v. City of Temple*, 365 S.W.3d 497, 504 (Tex. App.—Austin 2012, pet. denied); *accord Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 897 (Tex. 2017) (citing and quoting *M-E Eng'rs*); *see also CBM Eng'rs*, 403 S.W.3d at 345 ("The purpose of the certificate of merit is to provide a basis for the trial court to conclude that the plaintiff's claims are not frivolous.").[5]

## Analysis

As a threshold matter, we begin with Trevino's assertion on appeal that "Jimenez' new allegations, claims and certificate of merit are not to be considered by this Court." Mr. Jimenez's May 28, 2021 first amended original petition is not part of the "live pleadings when the trial court ruled on the motion to dismiss" and thus is not the petition pertinent to this Court's review of "whether and how § 150.002 applies." *See Jennings*, 471 S.W.3d at 581; *TDIndustries*, 339 S.W.3d at 753; *see also CTL/Thompson*, 390 S.W.3d at 300 (concluding plaintiff's nonsuit filed during defendant's interlocutory appeal from denial of section 150.002 motion to

---

[5] Though our supreme court has specifically compared the "purpose" of Chapter 150's section 150.002 and Chapter 74's medical liability expert report requirement, that court noted in *Melden* that it has "not substantively tie[d] the two chapters together" and "[Chapter 150] does not . . . expressly or impliedly identify Chapter 150's certificate of merit with Chapter 74's expert-report definition." *Melden*, 520 S.W.3d at 893 & n.4.

dismiss did not moot interlocutory appeal). Additionally, "[w]e cannot consider documents cited in a brief and attached as an appendix if they are not formally included in the record on appeal." *Bertrand v. Bertrand*, 449 S.W.3d 856, 863 n.8 (Tex. App.—Dallas 2014, no pet.); *accord Garcia v. Sasson*, 516 S.W.3d 585, 589 n.2 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Thus, we do not consider Mr. Jimenez's May 28, 2021 documents in our analysis.

In its first issue, Trevino asserts the trial court erred to the extent it concluded section 150.002 is inapplicable in this case. Mr. Jimenez responds that "the Trial Judge could properly conclude that a certificate of merit is not needed for the Appellants' role in (1) allowing its professional engineering stamp to be used by non-engineers (ABC Design) so as to mislead Appellee, and in (2) concealing the errors made by contractors or subcontractors during the renovation of the Plaintiff's home."

In determining whether claims arise out of the provision of professional services, we look to the substance of the plaintiff's pleadings. *Jennings*, 471 S.W.3d at 581 (citing *TIC N. Cent. Dallas 3, L.L.C. v. Envirobusiness, Inc.*, 463 S.W.3d 71, 79 (Tex. App.—Dallas 2014, pet. denied)). "The question is not whether the alleged mal-acts themselves constituted the provision of professional services, but whether the claims arise out of the provision of professional services." *Id*. "[A] claim arises out of the provision of professional services if the claim implicates a professional's education, training, and experience in applying special knowledge or judgment." *Id*.

(citing *Pelco Constr., Inc. v. Dannenbaum Eng'g Corp.*, 404 S.W.3d 48, 53 (Tex. App.—Houston [1st Dist.] 2013, no pet.)). Chapter 150 further explains the meaning of "professional services" in the engineering context by adopting the Texas Occupations Code's definition of "practice of engineering."[6] *See* TEX. CIV. PRAC. & REM. CODE § 150.001(3); TEX. OCC. CODE § 1001.003.

---

[6] Texas Occupations Code section 1001.003 provides:

(a) In this section:

(1) "Design coordination" includes the review and coordination of technical submissions prepared by others, including the work of other professionals working with or under the direction of an engineer with professional regard for the ability of each professional involved in a multidisciplinary effort.
. . . .
(b) In this chapter, "practice of engineering" means the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work.

(c) The practice of engineering includes:

(1) consultation, investigation, evaluation, analysis, planning, engineering for program management, providing an expert engineering opinion or testimony, engineering for testing or evaluating materials for construction or other engineering use, and mapping;
(2) design, conceptual design, or conceptual design coordination of engineering works or systems;
(3) development or optimization of plans and specifications for engineering works or systems;
. . . .
(6) performing an engineering survey or study;
(7) engineering for construction, alteration, or repair of real property;
. . . .
(9) engineering for review of the construction or installation of engineered works to monitor compliance with drawings or specifications;
(10) a service, design, analysis, or other work performed for a public or private entity in connection with a utility, structure, building, machine, equipment, process, system, work, project, or industrial or consumer product or equipment of a mechanical, electrical, electronic, chemical, hydraulic, pneumatic, geotechnical, or thermal nature; [or]
. . . .
(12) any other professional service necessary for the planning, progress, or completion of an engineering service.

TEX. OCC. CODE § 1001.003.

As to Mr. Jimenez's claims based on Jorge Trevino agreeing to "inspect" the work and purportedly concealing errors discovered, the record does not conclusively show those claims arise out of Trevino's provision of professional services. Trevino contends "inspections" are considered the practice of engineering "because it constitutes 'engineering for review of the construction or installation of engineered works to monitor compliance with drawings'" pursuant to section 1001.003(c)(9). But the only engineering services described in the original petition pertain to the plans. Trevino cites no portion of the record, and we have found none, that demonstrates the inspections in question were performed as part of engineering services Trevino was to provide. *See RCS Enters., LP v. Hilton*, No. 02-12-00233-CV, 2013 WL 6795390, at *5 (Tex. App.—Fort Worth Dec. 19, 2013, no pet.) (mem. op.) (concluding complaint based on foundation inspection by engineer who prepared home's engineered foundation and also acted as home's third party inspector did not require section 150.002 certificate of merit, because "merely inspecting a foundation does not involve an engineer's specialized education, training, and experience" and "there was no allegation that [defendant] acted as the TPI as part of the provision of engineering services"). Thus, the trial court did not abuse its discretion to the extent it concluded Mr. Jimenez's inspection-based claims did not trigger section 150.002's requirements.

The original petition also included claims based on allegations that (1) ABC "promised to work with a professional engineer who would aid in the development

of the design and plans, and who would approve the plans"; (2) ABC "utilized [Trevino] for the engineering required by the renovation and additions to the Home"; and (3) plans for the renovations and additions "were approved by" Trevino, but "did not contain the proper dimensions for the existing structure and additions, and the foundation plan for the new addition to the Home was not properly planned, engineered, or constructed leaving the addition structurally unsound." Consistent with these allegations, Mr. Oliver's affidavit attached to the original petition stated "[the] Foundation Plan was not reviewed, but was approved, and stamped by a registered professional engineer named Jorge Luis Trevino" and "ABC included a Roofing Framing Plan that was also reviewed, approved, and stamped by Mr. Trevino."

We cannot agree with Mr. Jimenez's position that the substance of these allegations could be construed as being limited to Trevino "allowing its professional engineering stamp to be used by non-engineers."[7] Based on the original petition's plain language, the essence of these allegations is that Trevino "approved" engineering aspects of deficient plans that resulted in the home not being properly "engineered." Thus, the corresponding claims implicate Trevino's "education, training, and experience in applying special knowledge or judgment" and require a

---

[7] Because we reject Mr. Jimenez's characterization of the original petition's allegations, we need not address whether the "non-action" he describes would, alone, trigger section 150.002's certificate of merit requirement. *Cf. Krasnicki v. Tactical Entm't, LLC*, 583 S.W.3d 279, 284 (Tex. App.—Dallas 2019, pet. denied) (concluding claims based on failure to disclose rather than affirmative communication were not subject to dismissal under Texas Citizens Participation Act).

certificate of merit. *See Jennings*, 471 S.W.3d at 581; TEX. OCC. CODE § 1001.003; *see also Whitaker v. R2M Eng'g, LLC*, 603 S.W.3d 530, 538 (Tex. App.—Amarillo 2020, pet. denied) (tortious acts themselves need not constitute exercise in practice of engineering, but rather need only originate, stem, or result from defendant engaging in such practice).

In its second issue, Trevino contends the certificate of merit attached to Mr. Jimenez's original petition did not meet section 150.002's requirement "to set forth the negligence, action, error, or omission of Trevino in providing his professional services and the factual basis for each such claim." According to Trevino, "Jimenez' initial certificate fails to mention any error or omission by Trevino, nor does it provide any factual basis for such." We disagree.

"Chapter 150 requires only that a similarly licensed professional, knowledgeable of the defendant's area of practice, provide a sworn written statement certifying that the defendant's professional actions or omissions were negligent or otherwise erroneous and the factual basis for such claims." *Melden*, 520 S.W.3d at 897. "The statute does not require a plaintiff to marshal his evidence or provide the full range of information that the defendant is entitled to obtain through formal discovery." *CBM Eng'rs*, 403 S.W.3d at 346. Further, the certificate of merit "need not recite the applicable standard of care and how it was allegedly violated in order to provide an adequate factual basis for the identification of professional errors." *Id*. at 345. We read a section 150.002 affidavit as a whole, not by viewing single

sentences in isolation. *H.W. Lochner, Inc. v. Rainbo Club, Inc.*, No. 12-17-00253-CV, 2018 WL 2112238, at *7 (Tex. App.—Tyler May 8, 2018, no pet.) (mem. op.).

In his affidavit attached to the original petition, Mr. Oliver described the details of ABC's plans and stated (1) the Foundation Plan "was not reviewed, but was approved, and stamped by a registered professional engineer named Jorge Luis Trevino"; (2) the Roofing Framing Plan "was also reviewed, approved, and stamped by Mr. Trevino"; and (3) "[a]n evaluation of the plans reveals that they were not sufficient for the renovation and addition project undertaken on the Home." The essence of the affidavit, read as a whole, is that based on Mr. Oliver's evaluation of the described plans in question, Trevino committed professional error by approving those plans because they contained engineering inadequacies. Mr. Jimenez's causes of action were based on those approved plans.

On this record, we conclude the affidavit meets the minimum requirement to set forth both a professional error claimed to exist and a factual basis for that claim. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(b). Thus, the trial court did not abuse its discretion by denying Trevino's section 150.002 motion to dismiss. *See Melden*, 520 S.W.3d at 897; *Jaster-Quintanilla & Assocs., Inc. v. Prouty*, 549 S.W.3d 183, 190–92 (Tex. App.—Austin 2018, no pet.) (concluding affiant provided "factual basis" to support opinion that engineer committed professional errors or omissions, where affiant explained that, based on his review of relevant documents, design details in construction drawings were deficient); *Gartrell v. Wren*, No. 01-11-00586-

CV, 2011 WL 6147786, at *4 (Tex. App.—Houston [1st Dist.] Dec. 8, 2011, pet. denied) (mem. op.) (concluding affidavit that "identified the alleged errors but did not describe how or why the errors occurred" was sufficient to support trial court's denial of section 150.002 motion to dismiss); *see also M-E Eng'rs*, 365 S.W.3d at 504 (section 150.002 "reflects a legislative goal of requiring merely that plaintiffs make a threshold showing that their claims have merit").

We affirm the trial court's order.

210304f.p05

/Cory L. Carlyle//
CORY L. CARLYLE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JORGE LUIS TREVINO AND J.L.
TREVINO & ASSOCIATES, PLLC,
Appellants

No. 05-21-00304-CV        V.

JOSE  JIMENEZ, Appellee

On Appeal from the 164th District
Court, Harris County, Texas
Trial Court Cause No. 2020-63808.
Opinion delivered by Justice Carlyle.
Justices Myers and Partida-Kipness
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JOSE JIMENEZ recover his costs of this appeal from appellants JORGE LUIS TREVINO AND J.L. TREVINO & ASSOCIATES, PLLC.

Judgment entered this 27th day of September, 2021.