# IN THE SUPREME COURT OF TEXAS

═════════════
No. 16-0078
═════════════

MELDEN & HUNT, INC., PETITIONER,

v.

EAST RIO HONDO WATER SUPPLY CORPORATION, RESPONDENT

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**Argued March 22, 2017**

JUSTICE DEVINE delivered the opinion of the Court.

Chapter 150 of the Civil Practice and Remedies Code generally requires that a sworn "certificate of merit" accompany a plaintiff's "complaint" in a case that "aris[es] out of the provision of professional services by a licensed or registered professional" named in the statute. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(a). The sworn certificate or affidavit must be from a similarly licensed professional who meets certain qualifications and attests to the lawsuit's merit. *Id.* § 150.002(a), (b). If the plaintiff fails to file a compliant certificate of merit, the statute directs the complaint's dismissal. *Id.* § 150.002(e). And the "order granting or denying a motion for dismissal is immediately appealable as an interlocutory order." *Id.* § 150.002(f).

In this interlocutory appeal, the defendant, an engineering firm to which the statute applies, contends that the trial court erred in not dismissing the plaintiff's complaint because the certificate of merit's author was unqualified and his affidavit's content inadequate. The court of appeals disagreed and affirmed the trial court's order denying the defendant's motion. 511 S.W.3d 743, 745, 750 (Tex. App.—Corpus Christi-Edinburg 2015). Because we agree that the trial court did not abuse its discretion in determining the certificate of merit sufficient for the plaintiff's case to proceed, we affirm as well.

I

East Rio Hondo Water Supply Corp., a member-owned, non-profit, water-supply corporation, contracted with Melden & Hunt, Inc., to provide engineering-design and project-supervision services for a new water-treatment plant in San Benito, Texas. After the project's substantial completion, East Rio complained about the water's quality, eventually attributing the water-quality issues to the plant's design and construction. East Rio subsequently sued the project's engineers (hereafter referred to as "Melden") and others involved with the construction, asserting claims for breach of contract, breach of express and implied warranties, negligence, and negligent misrepresentation.

To comply with the certificate-of-merit statute, East Rio filed the affidavit of Dan Leyendecker, P.E., with its original petition in the case. Leyendecker holds a bachelor of science degree in civil engineering from Texas A&M University, is a registered professional engineer in Texas and eight other states, is the president and principal of LNV Engineering, and claims twenty-three years' experience in "master planning, detailed design and construction management." He further swears he has experience designing and analyzing water-treatment plants like East Rio's

and is familiar with the standard of care an engineer of ordinary knowledge and skill should employ when designing such a project.

Melden objected to Leyendecker's affidavit, complaining that the affidavit did not comply with the statute's requirements and that Leyendecker did not meet the statute's qualifications. After the court of appeals affirmed the trial court's order rejecting these same complaints, 511 S.W.3d at 745, Melden filed its petition for review, complaining again about Leyendecker's qualifications and the affidavit's failure to provide the factual basis required by the statute. Similar challenges are a recurring theme under chapter 150, so we granted Melden's petition for review to consider these issues.[1]

II

Chapter 150 applies to "any action or arbitration proceeding for damages arising out of the provision of professional services" by architects, engineers, land surveyors, and landscape architects, as well as the firms in which they practice. TEX. CIV. PRAC. & REM. CODE §§ 150.001(1-a), .002(a). It requires that a certificate of merit accompany the initiation of a lawsuit against these named design professionals. *Id.* § 150.002(a). A certificate of merit is an affidavit from a third-party professional who is competent to testify, holds the same license or registration as the defendant, and is knowledgeable in the defendant's practice area. *Id.* The affiant must also be licensed or registered in Texas and actively engaged in the practice. *Id.* § 150.002(b); *see also Levinson Alcoser Assocs.,*

---

[1] We have jurisdiction over interlocutory appeals in which the court of appeals "holds differently from a prior decision of" this Court or of another court of appeals, meaning "there is inconsistency in the [] respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." TEX. GOV'T CODE § 22.225(c), (e). Melden asserts that inconsistencies with prior precedent exist here. *See* n.3 *infra.*

*L.P. v. El Pistolón II, Ltd.*, 513 S.W.3d 487, 492 (Tex. 2017) (listing the qualifications for a certificate-of-merit expert).

In this case, the defendant design professional is an engineering firm. The certificate of merit therefore must come from a competent and qualified third-party engineer who can attest to the factual basis of the plaintiff's underlying complaint. TEX. CIV. PRAC. & REM. CODE § 150.002(a)-(b). Leyendecker's affidavit states that he "hold[s] the same engineering license as [the engineer] who designed the Plant and drafted the construction documents," and Melden does not dispute that Leyendecker is a Texas-licensed professional engineer. But Melden questions whether Leyendecker is "actively engaged in the practice" and "knowledgeable" about Melden's practice area. *Id.*

First, Melden observes that Leyendecker never states he is actively engaged in engineering and argues that neither Leyendecker's position as president and principal of an engineering firm nor his statements about past engineering experience demonstrate Leyendecker's active engagement. Next, Melden contends that Leyendecker's averments of many years of experience "in master planning, detailed design and construction management" and of "education and experience in the design and analysis of water treatment plants, including clarifiers, pumps, filters, piping, controls, and chemical feed systems" are conclusory and thus no evidence that Leyendecker is "knowledgeable" in its practice area. Finally, Melden submits that Leyendecker's opinions should be judged like any other expert witness for competency and admissibility because the statutory requirements here mirror those in our rules of evidence. *Compare id.* § 150.002(a)(3) *with* TEX. R. EVID. 702.

Our courts of appeals have generally rejected the notion that chapter 150 imposes the same level of scrutiny as that imposed on the admissibility of expert-opinion testimony for summary-judgment or trial purposes. *See, e.g.*, *Benchmark Eng'g Corp. v. Sam Houston Race Park*, 316 S.W.3d 41, 47 (Tex. App.—Houston [14th Dist.] 2010, pet. granted, judgm't vacated w.r.m.) (contrasting statutory requirements for certificates of merit with standards governing admissibility of trial and summary-judgment evidence); *see also Gaertner v. Langhoff*, 509 S.W.3d 392, 398 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding that the statute's focus is on providing the trial court a basis to judge the lawsuit's potential rather than on the potential admissibility of expert testimony); *Hardy v. Matter*, 350 S.W.3d 329, 333 (Tex. App.—San Antonio 2011, pet. dism'd) (noting that the statute requires only that the affiant hold the specified qualifications and is silent on how and when the expert's qualifications must be established). The Third Court of Appeals has interpreted the statute similarly:

> What chapter 150 requires, with respect to subject-area expertise, is that the affiant "*is* knowledgeable in the area of practice of the defendant." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a) (emphasis added). Chapter 150 does not require that an affiant establish his or her knowledge through testimony that would be competent or admissible as evidence, or even that the affiant explicitly establish or address such knowledge within the face of the certificate—indeed, it imposes no particular requirements or limitations as to how the trial court ascertains whether the affiant possesses the requisite knowledge.

*M-E Eng'rs, Inc. v. City of Temple*, 365 S.W.3d 497, 503 (Tex. App.—Austin 2012, pet. denied).

The trial court, of course, cannot merely assume the existence of such knowledge. Thus, we recently held an architect unqualified to provide a certificate because nothing in the record indicated he was knowledgeable in the defendant's area of practice. *Levinson Alcoser*, 513 S.W.3d at 494.

5

The plaintiff argued such knowledge could reasonably be inferred from other statutory qualifications, such as the architect's active engagement in the practice under a state-issued license. *Id.* at 493. We disagreed that the statute's knowledge requirement was synonymous with its licensure or active-engagement requirements and concluded that "some additional explication or evidence reflecting the expert's familiarity or experience with the practice area at issue in the litigation" was required. *Id.* at 494. And because no explanation or statement of the expert's knowledge existed in the record, we concluded the trial court abused its discretion by denying the defendant's motion to dismiss. *Id.* Here, the explanation of the expert's relevant knowledge or experience that was missing in *Levinson Alcoser* is present.

The court of appeals concluded that Leyendecker's averments about his education and experience "including the 'design and analysis of water treatment plants, including clarifiers, pumps, filters, piping, controls, and chemical fees systems'" were "factual statements" supporting the conclusion that Leyendecker was "knowledgeable in Medlen's area of practice and competent to testify." 511 S.W.3d at 747. We agree. Other courts have held similar factual statements sufficient.[2] The court of appeals also concluded that Leyendecker's affidavit included information indicative of

_____

[2] *See, e.g.*, *Dunham Eng'g, Inc. v. Sherwin-Williams Co.*, 404 S.W.3d 785, 788, 795 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (expert's certificate indicated he held a Ph.D. in civil engineering, was licensed as a professional civil engineer, currently served as a civil-engineering professor at the University of Texas, and, that through practice, research, and teaching, he was familiar with the legal requirements and industry customs regarding competitive bidding on public-works projects like those at issue); *CBM Eng'rs, Inc. v. Tellepsen Builders, L.P.*, 403 S.W.3d 339, 342, 346 (Tex. App.—Houston [1st Dist.] 2013, pet denied) (beyond affidavit, expert's resume demonstrated he had bachelor's degrees in both architecture and architectural engineering, that he was a licensed professional structural engineer, and described his twenty-seven years of experience in diversified aspects of structural engineering analysis, design, and management); *M-E Eng'rs*, 365 S.W.3d at 501, 503 (expert averred that he practiced in the same design of heating, ventilating, air conditioning systems, and plumbing systems as the defendant, but court also noted other facts tending to confirm the expert's knowledge such as his descriptions and analysis of eleven sets of identified problems in the building's HVAC system).

6

an active engineering practice and that the trial court therefore did not abuse its discretion in determining Leyendecker qualified. *Id.* at 748. Again, we agree and conclude that the trial court did not abuse its discretion in determining Leyendecker qualified to provide a certificate of merit in the case.

### III

The statute does not expressly require that the expert's qualifications appear in the affidavit itself. *Cf. Levinson Alcoser*, 513 S.W.3d at 494 (observing that qualifications may be established by record sources other than the expert's affidavit). Nevertheless, the affidavit is a reasonable place to provide this information—as Leyendecker has done here. The statute does require, however, that the expert's affidavit address the lawsuit's "factual basis." TEX. CIV. PRAC. & REM. CODE § 150.002(b). The parties disagree about what the affidavit must include to satisfy this requirement.

Melden argues the factual-basis requirement obligated Leyendecker to provide factual support for the elements of each theory or cause of action pled by the plaintiff. Melden contends that, in this respect, the certificate of merit is similar to the preliminary expert report required for health care liability claims under the Medical Liability Act, chapter 74 of the Civil Practice and Remedies Code. *See id.* § 74.351. Melden submits that this Court has repeatedly used chapter 74 to inform its construction of chapter 150[3] and that we should continue the practice here by essentially

---

[3] Melden cites three examples of this Court's "implicit directive" that chapter 150 be interpreted in light of chapter 74. *Jaster v. Comet II Constr.*, 438 S.W.3d 556, 567-68 (Tex. 2014); *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 388-89, 393, 395 (Tex. 2014); *CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n*, 390 S.W.3d 299, 300 (Tex. 2013) (per curiam). Melden complains further that the court of appeals' failure to read the two chapters together, consistent with this Court's approach, creates an inconsistency that requires clarification, which provides a basis for our jurisdiction. *See, e.g.*, TEX. GOV'T CODE § 22.225(e) (defining "conflicts jurisdiction"); *Coyote Lake Ranch, LLC v. City of Lubbock*, 498 S.W.3d 53, 58 n.12 (Tex. 2016) (noting the Legislature's changes to this Court's prior more restrictive view of "conflicts jurisdiction"). Melden also submits that the court of appeals' conclusion

importing chapter 74's expert report into the certificate-of-merit statute. Chapter 74 defines an expert report to include "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6) (defining "expert report" for purposes of the Medical Liability Act).

East Rio responds that the Court has not used chapter 74 as a substantive guide when interpreting chapter 150. Chapter 74 is not relevant, East Rio submits, because the meaning of section 150.002(b)'s unambiguous text is at issue here rather than an ambiguous term or analogous procedural question as in previous cases.[4] East Rio concludes that the statute requires only that the expert's affidavit include the factual basis for the expert's claims of negligence or other professional errors or omissions. The statute does not require the expert to address the legal elements of each cause of action, nor does the statute expressly or impliedly identify chapter 150's certificate of merit with chapter 74's expert-report definition. *See, e.g.*, *Benchmark Eng'g.*, 316 S.W.3d at 47 (rejecting

---

that the factual-basis requirement does not obligate the expert to recite the applicable standard of care is inconsistent with other decisions that conclude "the certificate of merit must necessarily address the applicable standard of care." *Criterium-Farrell Eng'rs v. Owens*, 248 S.W.3d 395, 400 (Tex. App.—Beaumont 2008, no pet).

[4] East Rio distinguishes our previous chapter 150 cases. For example, in *Jaster*, the term "claimant" was not defined in chapter 150 and its meaning was unclear, so the Court consulted chapters 9 and 74 for their definitions of the term. *Jaster*, 438 S.W.3d at 567-68. Using chapter 74 as an aid in defining an undefined term in chapter 150 does not substantively tie the two chapters together. In *Crosstex Energy*, the Court compared the interlocutory appeals authorized by the respective chapters, noting distinctions but also recognizing chapter 74 as "a useful, if imperfect, analogue" in this instance. *Crosstex*, 430 S.W.3d at 388. And in *CTL/Thompson*, the Court again found a procedurally similar case involving an interlocutory appeal under chapter 74 useful because it addressed an issue identical to the one before the Court: whether a plaintiff could moot an interlocutory appeal by taking a nonsuit. Following *Villafani v. Trejo*, 251 S.W.3d 466, 467-68 (Tex. 2008), a chapter 74 interlocutory appeal involving the same issue, we held that the plaintiff's nonsuit did not moot the defendant's pending appeal because the defendant's underlying motion to dismiss sought affirmative relief in the form of a dismissal sanction. *CTL/Thompson*, 390 S.W.3d at 300.

defendant engineer's reliance on expert-report requirements under the "very explicit" Medical Liability Act).

Chapter 150 describes the certificate of merit as an affidavit from a similarly licensed, third-party expert who is directed to provide a factual basis for the lawsuit. The statute provides, in relevant part, that the expert's affidavit

> set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and *the factual basis for each such claim*.

TEX. CIV. PRAC. & REM. CODE § 150.002(b) (emphasis added). Melden interprets the factual-basis requirement as modifying "each theory of recovery" such that the requirement applies to the elements of each cause of action pled. East Rio interprets the factual-basis requirement to refer to the "negligence, if any, or other action, error, or omission" of the professional in providing advice, judgment, opinion, or similar professional skill.

The issue is one of statutory construction, a legal question we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). When statutory text is clear, we do not resort to rules of construction or extrinsic aids to construe the text because the truest measure of what the Legislature intended is what it enacted. *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). And we endeavor to read statutes contextually to give effect to every word, clause, and sentence. *In re Office of Attorney Gen.*, 422 S.W.3d 623, 629 (Tex. 2013). We also typically give statutory terms their ordinary or common meaning unless context or a supplied definition indicates that a different meaning was intended. *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 765 (Tex. 2014).

9

Because "factual basis" has no special, technical, or acquired meaning and is not otherwise defined in the certificate-of-merit statute, we interpret the term according to its ordinary meaning. *Id.*; *see also* TEX. GOV'T CODE § 312.002(a) (stating the general rule that "words [] be given their ordinary meaning"). Thus, in *Benchmark Engineering*, the court consulted Webster's and Black's Law Dictionary to conclude that "factual basis" referred to the events or circumstances giving rise to the professional errors or omissions identified by the third-party expert as distinguished from their legal effect. *See* 316 S.W.3d at 48 (quoting dictionary definitions). The *Benchmark* court was interpreting the statute's 2005 version, however, and we are concerned here with the statute as amended in 2009. Melden suggests that this latter amendment broadened the existing factual-basis requirement.

The certificate-of-merit statute has been amended three times since its enactment in 2003, twice in 2005 and again in 2009. *See S&P Consulting Eng'rs PLLC v. Baker*, 334 S.W.3d 390, 394-95 (Tex. App.—Austin 2011, no pet.) (en banc) (discussing the statute's history). As originally enacted, the statute required plaintiffs, filing complaints of professional negligence against licensed engineers and registered architects, to file an affidavit from a similarly licensed or registered third-party professional with the complaint. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 20.01, 2003 Tex. Gen. Laws 847, 896–97. The original version provided that the affidavit "set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim." *Id.*

In 2005, the statute was amended to add registered professional land surveyors to the list of covered design professionals and ostensibly broadened to apply to "any action or arbitration

10

proceeding for damages arising out of the provision of professional services by a design professional" named in the statute. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370; *see also* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348. The statute, however, continued to provide that the affidavit was to "set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim." *Id.* Courts continued to interpret this language as limiting the certificate-of-merit statute to professional-negligence claims even after the 2005 amendment. *See, e.g., JJW Dev., L.L.C. v. Strand Sys. Eng'g, Inc.*, 378 S.W.3d 571, 577-79 (Tex. App.—Dallas 2012, pet. denied) (citing similar cases); *but see S&P Consulting Eng'rs*, 334 S.W.3d at 403-04 (overruling prior precedent limiting the scope of the 2005 amendment).

In 2009, the statute was amended and clarified to provide additional detail. *See S&P Consulting Eng'rs*, 334 S.W.3d at 395 (discussing changes). As relevant here, the amendment moved the part of the statute pertaining to the certificate of merit's content to its own subsection and ceased to tie the certificate to "at least one negligent act, error, or omission" as reflected below:

> *The* affidavit shall set forth specifically *for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill* [] claimed to exist and the factual basis for each such claim."

Act of May 29, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1992 (codified as TEX. CIV. PRAC. & REM. CODE § 150.002(b)). The 2009 amendment thus clarified that the statute was not to be limited to professional-negligence claims. As one court explained, the amendment "served to eliminate any continuing debate or uncertainty as to whether prior versions of the

11

certificate-of-merit requirement were triggered by damage claims predicated on professional errors or omissions that were couched in theories other than negligence." *M-E Eng'rs*, 365 S.W.3d at 506.

Melden, however, interprets the 2009 amendments to have broader implications. Rather than simply clarifying the statute's application to any action arising out of the provision of professional services, regardless of the legal theory, Melden interprets the new language—*for each theory of recovery for which damages are sought*—as expanding the factual-basis requirement to include the various elements of each underlying theory alleged by the plaintiff. We, however, do not interpret the 2009 amendment as enlarging the factual-basis requirement or otherwise changing its existing relationship within the statute.

After considering a similar dispute involving the 2009 amendment, the Third Court of Appeals reached the same conclusion. *Id.* The court's analysis in that case corresponds with our view of the statute:

> Read as a whole, section 150.002, subsection (b), reveals a core focus on ascertaining and verifying the existence of errors or omissions in the professional services provided by a "licensed or registered professional." In particular, the Legislature has required that the certificate of merit "set forth specifically . . . the *negligence*, if any, *or other action, error, or omission* of the licensed or registered professional *in providing the professional service*." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(b) (emphases added). And this statement of the defendant's acts or omissions "in providing the professional service" must "includ[e] *any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim*." *Id.* § 150.002(b) (emphases added). While appellants ascribe broader implications to the concluding phrase "factual basis for each such claim," in context "*each such claim*" plainly refers to the immediately preceding "any error or omission in providing advice, judgment, opinion or a similar professional skill *claimed to exist*" (emphases added), which is simply the information that a certificate must provide regarding errors or omissions in the professional services at issue. *See id.*

12

This core focus on errors and omissions in professional services is not altered by the first portion of subsection (b), which requires a certificate to provide these facts "for each theory of recovery for which damages are sought." *See id.* The effect of this phrase, which was amended to its current form in 2009, is to emphasize that the certificate must identify and verify the existence of any professional errors or omissions that are elements or operative facts under any legal theory on which the plaintiff intends to rely to recover damages. It thus served to eliminate any continuing debate or uncertainty as to whether prior versions of the certificate-of-merit requirement were triggered by damage claims predicated on professional errors or omissions that were couched in theories other than negligence.

*Id.* at 505-06 (emphasis in original).

Although the certificate-of-merit statute has evolved and in some respects expanded since its enactment in 2003, the factual-basis requirement's core purpose has not changed.[5] Before the 2009 amendment, "the factual basis for each such claim" referred to the "negligent act, error, or omission" the expert claimed to exist. After the amendment, "the factual basis for each such claim" referred to the "negligence, if any, or other action, error, or omission" the expert claimed to exist.

We accordingly reject Melden's interpretation of the statute, which would require the expert's affidavit to address the elements of the plaintiff's various theories or causes of action. The

---

[5] *See, e.g.*, *Couchman v. Cardona*, 471 S.W.3d 20, 26 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (concluding that the statute does not require certificate to address every element but rather to provide a factual basis for the allegations of professional errors or omissions); *Dunham Eng'g*, 404 S.W.3d at 796 (concluding that the statute's plain meaning requires the affiant to describe the facts giving rise to the claim); *Morrison Seifert Murphy, Inc. v. Zion*, 384 S.W.3d 421, 428 (Tex. App.—Dallas 2012, no pet.) (same); *M-E Eng'rs*, 365 S.W.3d at 506 (concluding that the statute does not "require that a certificate address operative facts other than the professional errors and omissions that are the focus of the statute"); *Nangia v. Taylor*, 338 S.W.3d 768, 772 (Tex. App.—Beaumont 2011, no pet.) (noting that statute does not require the expert to "explain the law to the trial court"); *Benchmark Eng'g*, 316 S.W.3d at 48 (concluding that the statute's plain meaning requires the affiant to describe the facts giving rise to the claim); *but see Levinson Alcoser Assocs., L.P. v. El Pistolón II, Ltd.*, 500 S.W.3d 431, 438 (Tex. App.—Corpus Christi 2015) (dismissing contract claim but not negligence claims because affidavit did not discuss the existence of a contract or its breach), *rev'd on other grounds*, 513 S.W.3d 487 (Tex. 2017); *Packard Eng'g Assocs. v. Sally Grp., L.L.C.*, 398 S.W.3d 389, 395 (Tex. App.—Beaumont 2013, no pet.) (concluding that expert's affidavit of professional's errors, omissions, and misrepresentations was sufficient for breach-of-contract and DTPA claims but not fraud because the affidavit did not address certain elements); *Garza v. Carmona*, 390 S.W.3d 391, 397-98 (Tex. App.—Corpus Christi 2012, no pet.) (noting that the affidavit did not address the elements of several causes of action).

statute instead obligates the plaintiff to get an affidavit from a third-party expert attesting to the defendant's professional errors or omissions and their factual basis.[6] The trial court then determines whether the expert's affidavit sufficiently demonstrates that the plaintiff's complaint is not frivolous. *See CTL/Thompson*, 390 S.W.3d at 301 (noting that statute provides for dismissal as a sanction "to deter meritless claims and bring them quickly to an end").

In this case, Leyendecker swore to "23 years experience in master planning, detailed design and construction management." More specifically, he averred to his "education and experience in the design and analysis of water treatment plants, including clarifiers, pumps, filters, piping, controls, and chemical feed systems." He further stated that he was familiar with the standard of care an "engineer of ordinary knowledge and skill should employ in the design of water treatment plants" such as the one at issue in the litigation. After noting his review of available documents, including the engineering plans, construction documents, and equipment specifications of the plant, and his on-site inspections and tests, he concluded that Melden failed to use ordinary care in the performance of its professional duties relating to the plant's design and filtration system. Leyendecker then identified Melden's negligence and other errors to include (1) the failure "to provide and design a water treatment plant without cross connections," (2) the failure "to select and design a properly functioning solids contact clarifier," (3) the failure "to design a filtration system that can be properly backwashed and safely brought into operation without dangerous turbidity spikes, (4) the failure "to

---

[6] *See M-E Eng'rs*, 365 S.W.3d at 506 (concluding that the statute reflects "legislative intent that if a plaintiff seeks damages under a liability theory that is predicated upon a licensed or registered professional's alleged errors or omissions in providing professional services, the plaintiff must obtain a certificate of merit verifying the existence of the errors or omissions in order to proceed under that theory").

14

provide adequate assistance and support," and (5) the failure "to design a proper air filter scour system."

Leyendecker explained each of these "failures" in greater detail. For example, he explained that cross connections can lead to inadvertent contamination of treated water, posing health risks and related regulatory issues, and that Melden's plant design improperly incorporated multiple cross connections. Leyendecker also explained that the plant's filtration system was designed to "operate in a regulatory non-compliant manner":

> Melden & Hunt and Booe[7] designed the Filter-to-Waste piping, associated valves and control scheme to operate in a regulatory non-compliant manner. When the Filter-to-Waste process is engaged, it creates a hydraulic shock in the filter bank, distorting the filter media, and creating dangerous turbidity spikes in already filtered and treated water. Further, the air filter scour system fails to perform as intended. The whole point of the Filter-to-Waste process is to ease the transition between the filter backwash cycle and the water treatment process. The Plant is not operating in this manner and this is due to Melden & Hunt's and Booe's negligent design of the Filter-to-Waste process, including the associated piping, valves, and controls.

The court of appeals connected Leyendecker's claims of professional errors or omissions to each of East Rio's pled theories. 511 S.W.3d at 749-50.

Melden contends, however, that Leyendecker's affidavit ultimately fails to provide an appropriate factual basis because it equivocates in the end, "reserv[ing] the right to modify my opinions if additional information is made available or if additional inspection opportunities reveal additional information." East Rio responds that this closing statement is included merely to confirm the sources Leyendecker consulted in forming his opinions. In this respect, Leyendecker states that

---

[7] Alan Booe was the engineer who designed the plant and drafted the construction documents on behalf of Melden & Hunt.

15

he reviewed the engineering plans and construction documents prepared by Melden, together with the equipment cutsheets, specifications, operations and maintenance manuals. Leyendecker also mentions that he and his staff inspected the Plant, conducted tests, and interviewed East Rio staff.

Rather than equivocation, we view Leyendecker's reservation merely as recognition of the preliminary nature of the certificate of merit, which, as the court of appeals observed, must be "filed early in the litigation, before discovery and before other dispositive motions may be available." 511 S.W.3d at 749 (quoting *Couchman*, 471 S.W.3d at 26) (internal quotations omitted). Chapter 150 requires only that a similarly licensed professional, knowledgeable of the defendant's area of practice, provide a sworn written statement certifying that the defendant's professional actions or omissions were negligent or otherwise erroneous and the factual basis for such claims. *See Dunham Eng'g*, 404 S.W.3d at 795 (noting that "at the certificate-of-merit stage, before discovery and before other dispositive motions are available, the plaintiff is not required to fully marshal his evidence") (internal quotations omitted); *CBM Eng'rs*, 403 S.W.3d at 346 (noting that statute does not require a plaintiff to marshal his evidence or provide the full range of information that the defendant is entitled to obtain through formal discovery); *M-E Eng'rs*, 365 S.W.3d at 504 (noting that statute "reflects a legislative goal of requiring merely that plaintiffs make a threshold showing that their claims have merit").

\* \* \* \* \*

The court of appeals held that the trial court did not abuse its discretion by denying Melden's motion to dismiss based on the certificate of merit's sufficiency. We agree that no abuse of discretion has been shown. The court of appeals' judgment is accordingly affirmed.

16

_____
John P. Devine
Justice

**OPINION DELIVERED:**  June 9, 2017