**Affirmed and Opinion Filed March 13, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00219-CV**

**SUPERIOR INDUSTRIES, INC., Appellant**
**V.**
**GARRETT KALLUS, Appellee**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-03261**

## MEMORANDUM OPINION

Before Justices Goldstein, Garcia, and Miskel
Opinion by Justice Miskel

In this interlocutory appeal, appellant Superior Industries, Inc. ("Superior")

appeals the trial court's order denying Superior's motion to dismiss for failure of

appellee Garrett Kallus to file a certificate of merit with his original petition,

pursuant to chapter 150 of the Texas Civil Practice and Remedies Code. Kallus filed

suit against Superior and other defendants to recover damages for personal injuries

sustained while repairing a piece of industrial conveyer equipment manufactured by

Superior. We conclude that Superior has not shown that the trial court abused its

discretion in denying its motion to dismiss and we affirm the order.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In April 2021, Kallus was injured while repairing the hydraulic radial system of a portable telescopic radial stacking conveyer used to build stockpiles (a "telestacker") at the Arcosa Crushed Concrete – McKinney Recycle Yard. Superior manufactured the telestacker, which was owned by Arcosa, Inc., another defendant that is not a party to this appeal. Kallus worked for McCourt Equipment, Inc., Superior's distributor.

On the date of the incident, Kallus was asked to perform troubleshooting and maintenance work on the telestacker located at the recycling plant in McKinney, Texas. He contacted a customer service representative employed by Superior to discuss the repair work and asserts that he followed the customer representative's instructions. Kallus alleges that the representative failed to warn him of the dangers associated with the machine's braking system. This braking system allegedly failed while Kallus was working on the telestacker. The machine began rolling and ran over Kallus's right leg, causing injuries that required multiple surgeries.

In March 2022, Kallus filed his original petition against Superior and another defendant for claims arising from his injuries, and he amended his petition that June to join additional parties. He did not file a certificate of merit with either petition. In addition to negligence and gross negligence claims against Superior and the other defendants, Kallus asserts that Superior manufactured, designed, distributed, or sold the telestacker with design, manufacturing, or marketing defects that rendered the

–2–

telestacker unreasonably dangerous and caused Kallus's injuries. More specifically, Kallus makes the following product liability and negligence claims against Superior (summarized):

- Superior knew or should have known that there was an unreasonable risk in the intended or reasonably foreseeable use of the telestacker and failed to adequately warn Kallus of the risks or instruct Kallus how to avoid the dangers;

- Superior knew of safer alternative designs that were available and feasible at the time of production and that would have prevented or significantly reduced such risks;

- Superior manufactured the telestacker and deviated in the quality of construction, plan, materials, warnings or specifications;

- Superior is liable under strict product liability theories and expressly represented that its telestacker and component parts were safe to use, but knew or should have known that the telestacker and its parts were defective and dangerous and could not safely be used for the intended purposes, and placed them in the stream of commerce in conscious disregard of public safety and without adequate warning of the defects and without informing the public of the defects;

- Superior had a duty to Kallus to design, manufacture, market, distribute, maintain, lease or sell the telestacker in a reasonable manner and to ensure that the telestacker was free from defect; Superior breached these duties; and its conduct caused Kallus's injuries and damages.

- Superior engaged in negligent conduct, including the conduct described above as well as failing to exercise reasonable care in hiring, training or supervising its customer representative, and is vicariously liable for its employees and agents; and

- Superior's conduct was grossly negligent.

Nine months later, in January 2023, Superior filed its motion to dismiss Kallus's claims against Superior with prejudice, arguing that Kallus failed to file a

–3–

certificate of authority pursuant to chapter 150 of the Texas Civil Practices and Remedies Code—applicable to certain lawsuits asserting claims against specified licensed or registered professionals. *See* TEX. CIV. PRAC. & REM. CODE ANN. §150.002. After a hearing, the trial judge denied Superior's motion. This appeal ensued.

## II. STANDARD OF REVIEW

An order denying a motion to dismiss under chapter 150 of the Civil Practice and Remedies Code is appealable as an interlocutory order. TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(f). We review a trial court's order on a motion to dismiss under this statute for an abuse of discretion. *Lina T. Ramey & Assocs., Inc. v. Comeaux*, No. 05-23-00562-CV, 2023 WL 8183272, at *3 (Tex. App.—Dallas Nov. 27, 2023, no pet.) (mem. op.). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner without reference to any guiding rules or principles. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011); *Comeaux*, 2023 WL 8183272, at *3.

"[T]he party that complains of abuse of discretion has the burden to bring forth a record showing such abuse." *TDIndus. Inc. v. My Three Sons, Ltd.*, No. 05-13-00861, 2014 WL 1022453, at *2 (Tex. App.—Dallas Feb. 14, 2014, no pet.) (mem. op.) (quoting *Simon v. York Crane & Rigging Co. Inc.*, 739 S.W.2d 793, 795 (Tex. 1987)); s*ee also FAI Eng'rs, Inc. v. Logan*, No. 02-20-00255-CV, 2020 WL 7252315, at *4 (Tex. App.—Fort Worth Dec. 10, 2020, no pet.) (mem. op.) (stating

–4–

that the defendant engineering firm had the burden of proof on its motion to dismiss to demonstrate it met the requisites of Section 150.002(a) of the certificate-of-merit statute).

We construe statutory language de novo. *Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 491 (Tex. 2017). A reviewing court's goal is to determine and give effect to the legislature's intent. *Id.* A reviewing court looks to and relies on the plain meaning of a statute's words as expressing legislative intent unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results. *Id.* Courts construe statutes so that no part is surplusage, but so that each word has meaning. *Id.*

Once we construe the statute, we determine whether the trial court abused its discretion in applying the statute to the facts. *Comeaux*, 2023 WL 8183272, at *3. In applying the abuse of discretion standard, reviewing courts defer to the trial court's factual determinations; a reviewing court does not engage in its own factual review, but decides whether the record supports the trial court's resolution of factual matters. *State v. $217,590.00 in U.S. Currency*, 18 S.W.3d 631, 633–34 (Tex. 2000) (citing *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997)); *In re Marriage of Spalding*, No. 05-19-00484-CV, 2021 WL 4057567, at *3 (Tex. App.—Dallas Sept. 3, 2021, no pet.) (mem. op.).

**III.    APPLICABLE LAW – CERTIFICATES OF MERIT IN SUITS AGAINST LICENSED PROFESSIONAL ENGINEERS**

Chapter 150 of the Texas Civil Practices and Remedies Code requires the filing of an affidavit known as a certificate of merit in certain lawsuits involving claims against specified licensed or registered professionals. TEX. CIV. PRAC. & REM. CODE ANN. § 150.001–.002. The purpose of the certificate of merit is to provide a basis for the trial court to conclude that the plaintiff's claims have merit and are not frivolous. *Morrison Seifert Murphy, Inc. v. Zion*, 384 S.W.3d 421, 425 (Tex. App.—Dallas 2012, no pet.); *Jennings, Hackler & Partners, Inc. v. N. Tex. Mun. Water Dist.*, 471 S.W.3d 577, 581 (Tex. App.—Dallas 2015, pet. denied). Section 150.002 of the statute, "Certificate of Merit," provides that:

> (a) In any action . . . for damages arising out of the provision of professional services by a licensed or registered professional, a claimant shall be required to file with the complaint an affidavit of a third-party . . . licensed professional engineer . . . ."

> (b) The affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim . . . .

> (e) A claimant's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant. This dismissal may be with prejudice.

TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a), (b), and (e).

The threshold questions in determining whether §150.002 applies are (1) whether the defendant is a covered "licensed or registered professional" and (2) whether the claimant's damages arose out of the provision of professional services by such a professional. *See Jennings*, 471 S.W.3d at 581.

Chapter 150 defines a "licensed or registered professional" to include "a licensed professional engineer . . . or any firm in which such licensed or registered professional practices," including a corporation. TEX. CIV. PRAC. & REM. CODE ANN. § 150.001(1–c).

In determining whether claims arise out of the provision of professional services by a licensed professional engineer, courts review the substance of a claimant's pleadings. *Comeaux*, 2023 WL 8183272, at *4. A claim arises out of the provision of professional services if the substance of the pleadings implicates a professional's education, training, and experience in applying special knowledge or judgment. *Id.; Jennings,* 471 S.W.3d at 581. "The question is not whether the alleged mal-acts themselves constituted the provision of professional services, but whether the claims arise out of the provision of professional services." *Jennings,* 471 S.W.3d at 581. The certificate-of-merit statute applies to any action arising out of the provision of professional services by a licensed or registered professional, "regardless of the legal theory." *Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 894 (Tex. 2017)

–7–

Courts also look to the definition of "practice of engineering" in the Texas Occupations Code when conducting this analysis. *Comeaux*, 2023 WL 8183272, at *4; *Jacobs Eng'g Group, Inc. v. Elsey*, 502 S.W.3d 460, 464 (Tex. App.—Houston [14th] Dist. 2016, no pet.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 150.001(3) ("'Practice of engineering' has the meaning assigned by Section 1001.003, Occupations Code."). The Texas Occupations Code defines "practice of engineering" as "the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work." TEX. OCC. CODE §1001.003(b). Among other things, this definition specifically includes:

> (8) engineering for preparation of an operating or maintenance manual;
>
> . . .
>
> (10) a service, design, analysis, or other work performed for a public or private entity in connection with a utility, structure, building, machine, equipment, process, system, work, project, or industrial or consumer product or equipment of a mechanical, electrical, electronic, chemical, hydraulic, pneumatic, geotechnical, or thermal nature;

TEX. OCC. CODE ANN. §1001.003(c)(8), (10).

When § 150.002 of the Texas Civil Practice and Remedies Code applies, it requires the plaintiff to obtain an affidavit from a third-party expert attesting to the defendant's professional errors or omissions and the factual basis for the claims.

–8–

*Melden & Hunt*, 520 S.W.3d at 896; *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002. This certificate of merit must be filed with the initiation of a lawsuit against the licensed professional. *Melden & Hunt*, 520 S.W.3d at 890; TEX. CIV. PRAC. & REM. CODE ANN. §§ 150.001(1-b), 150.002(a). The trial court then decides "whether the expert's affidavit sufficiently demonstrates that the complaint is not frivolous." *Melden & Hunt*, 520 S.W.3d at 896. If required, a claimant's failure to file a necessary certificate of merit with its complaint must result in the dismissal of the complaint, and this dismissal "may" be with prejudice. *See id.* at 889; TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(e).

## IV. SUPERIOR DID NOT SHOW THAT THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THAT THE CERTIFICATE OF MERIT STATUTE DID NOT APPLY

In one issue on appeal, Superior asserts that the trial court abused its discretion in denying Superior's motion to dismiss under this statute. Superior argues that Kallus was required to file a certificate of merit with his petition because (1) Superior is a licensed or registered professional as defined in the statute, and (2) Kallus's claims against Superior arise out of Superior's provision of professional services as a licensed or registered professional.

Kallus attached exhibits to its response to Superior's motion to dismiss in support of his contention that a certificate of merit was not required in this case. The trial judge sustained Superior's objections to the exhibits. In response to Kallus's reference to certain discovery in its brief, Superior argues that discovery conducted

–9–

in this case should have no bearing on the resolution of the issues presented in this appeal because the certificate of merit must be filed with the petition prior to discovery. We do not rely on any discovery in reaching our conclusion.

### A. The trial court could have concluded that Superior did not prove that it was a licensed or registered professional.

As a threshold issue, Superior has the burden to demonstrate that it is a "licensed or registered professional" as defined in the certificate-of-merit statute. *See, e.g., TDIndus.*, 2014 WL 1022453, at *2; *Simon*, 739 S.W.2d at 795; *FAI Eng'rs*, 2020 WL 7252315, at *4. The definition of "licensed or registered professional" in the statute includes licensed professional engineers and "any firm in which such licensed or registered professional practices, including but not limited to a corporation. . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 150.001(1–c). Superior argues that it meets this definition because it is a corporation that employs licensed professional engineers. Superior's motion to dismiss included a January 2023 affidavit of its Director of Engineering at Superior (the Director), who attested as follows:

> 2. By virtue of my duties and responsibilities as of my role as Director of Engineering, I am familiar with the work Superior performs and the skill sets of the individuals it employs.
>
> 3. Superior engineers, manufactures, sells, and supports dry bulk handling equipment and components. In connection with its work, Superior [employs] licensed professional engineers.
>
> 4. Currently, Superior employs the following licensed professional engineers:

–10–

a. Lafe Grimm (MN License No. 55973);
b. Paul Schmidgall (MN License No. 55444);
c. Travis Thooft (MN License No. 56611); and
d. Austin Schmidgall (MN License No. 54819, CO license No. PE.0056654, AZ License No. 70475).

5. Superior manufactured telestacker-swing axle model no. 36x150 TSSA, serial no. 1655767 (the "Telestacker") in March 2020. At that time Superior employed the following licensed engineers:

a. Lafe Grimm (MN License No. 55973);
b. Paul Schmidgall (MN License No. 55444);
c. Travis Thooft (MN License No. 56611);
d. Austin Schmidgall (MN License No. 54819, CO license No. PE.0056654, AZ License No. 70475);
e. Kent Olson (MN. License No. 57155); and
f. Jarrod Felton (MN License No. 47088, TX License No. 140968, IA License No. P26350, NV License No. 022971, PA License No. PEO79589, also currently or previously licensed in SD,WI, MD, KS, and MO).

The affidavit contains no additional attestations.

Superior argues that it met its burden to demonstrate that it is a licensed or registered professional based on this affidavit and that the trial court abused its discretion to the extent it did not so find. We disagree. The statutory definition requires not simply that the firm employ the licensed engineers but that they "practice" within that firm. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.001(1–c). The Director states only that he is familiar with the employees' skill sets and that Superior employs these engineers "[i]n connection with its work." The affidavit does not provide the employees' job descriptions or job titles (other than the Director's) or otherwise provide evidence that their jobs at Superior involve the

–11–

practice of engineering. An employee may hold an engineering license yet not practice engineering in his role at a corporation, just as a person may maintain a law license even if his current job does not involve practicing law. The trial court was within its discretion to weigh Superior's evidence and conclude that Superior failed to carry its burden to prove that it was a licensed professional engineering firm under the statute.

In its reply to its motion to dismiss, Superior also states that it has multiple patents related to the telestacker and its components that were obtained through the licensed professional engineers employed by Superior. These patents are not attested to in the Director's affidavit nor attached as exhibits thereto. No evidence of the content of the patents is provided—the reply lists only the title of a patent, a patent number, a year, and an employee's name.[1] The trial court was within its discretion to find that Superior's list of employees and list of past patents did not connect Superior to the practice of professional services by a licensed professional engineer. In other words, in weighing Superior's evidence, the trial court could have found that the list failed to prove that Superior was a firm in which these individuals were licensed professionals who practiced engineering at the time of the occurrence

---

[1] The footnote in Superior's reply to its motion to dismiss in support of this arguments states: "*See e. g.*, P. Schmidgall, *et al, Portable Radial Stacking Conveyer*, Patent No. 5,833,043 (Nov. 10, 1998), P. Schmidgal *et. al, Portable Telescoping Radial Stacking Conveyer*, Patent No. US 6,360,876 B1 (Mar. 26, 2002); L. Grimm, *et. al, Radial Conveyer Undercarriage Apparatus Systems and Methods*, Patent No. US 10,829,308 B2 (Nov. 10, 2020) and A. Schmidgall, *et al, Road-Portable Conveyor Apparatus Systems and Methods*, Patent No. US 10,919,704 B2 (Feb. 16, 2021)."

at issue. *See FAI Eng'rs*, 2020 WL 7252315, at *3. Superior asks us to find that the trial court acted arbitrarily or unreasonably, without reference to any guiding rules and principles, but we defer to the trial court's determination of how to weigh Superior's evidence. *See $217,590.00 in U.S. Currency*, 18 S.W.3d at 633–34; *In re Marriage of Spalding*, 2021 WL 4057567, at *3.

Superior argues that its Director's affidavit is competent evidence that Superior is a licensed or registered professional for purposes of the statute. Superior asserts that "Texas courts have repeatedly held that an affidavit, like the affidavit Superior provided, *standing alone*, is sufficient to support [this] finding (emphasis in original)." However, the affidavits in the cases Superior cites were accompanied by additional evidence or otherwise provided more direct attestations than Superior's affidavit that licensed professionals practiced engineering for the firms. *See, e.g., AMEC Foster Wheeler USA Corp. v. Goats*, No. 09-18-00477-CV, 2019 WL 3949466, at *6 (Tex. App.—Beaumont Aug. 22, 2019, no pet.) (mem. op.) (providing affidavit testimony that defendant firm had employed licensed professional engineers for decades along with a certification showing it was registered in Texas to offer and perform engineering services as well as a roster from the Texas Board of Professional Engineers of its employees); *Cimarron Eng'g, LLC v. Miramar Petroleum, Inc.*, No. 13-14-00163-CV, 2014 WL 2937012, at *1–2 (Tex. App.—Corpus Christi–Edinburg June 26, 2014, no pet.) (mem. op.) (defendant engineering firm provided affidavit of the owner, president, and employee of the

firm attesting he had been a licensed engineer in Texas since 1990 and had practiced as an engineer continually since that time); *UOP, L.L.C. v. Kozak*, No. 01-08-00896-CV, 2010 WL 2026037, at \*1 (Tex. App.—Houston [1st Dist] May 20, 2010, no pet.) (mem. op.) (affidavit included evidence that the defendant firm employed licensed professional engineers who provided engineering services for refineries and generated refinery process designs in a case alleging that the defendant acted as the engineering design service provider and contractor during construction of a refinery). Kallus argues that most certificate-of-merit cases involve defendants that are professional firms whose primary business is providing engineering services. In each of these cases, for example, the business entities provided evidence that they were firms engaged in the business of providing professional engineering services to their customers. In contrast, relating to the claims in this suit, Superior did not sell professional engineering services to its customer—it sold a product.

Superior further asserts that the fact that it is not registered with the Texas Board of Professional Engineers is irrelevant for the purposes of determining whether it is a licensed or registered professional, because registration does not prove whether a licensed or registered professional practices within a firm. In the cases Superior cites, courts determined that evidence of a defendant firm's registration with the Texas Board of Professional Engineers, *by itself*, was inadequate to prove that licensed professionals practiced within the firm. *See TDIndus.,* 2014 WL 1022453, at \*4 (determining that the only purported evidence

–14–

provided—a printout of the Texas Board of Professional Engineers' Firm Search results page and the government website address of this search page—showed nothing respecting the defendant's asserted status as a licensed or registered professional pursuant to Chapter 150); *FAI Eng'rs*, 2020 WL 7252315, at *3 (determining that the defendant's nonworking hyperlink to the website of the Texas Board of Professional Engineers did not constitute evidence that a licensed or registered professional practiced within the firm at the time of the occurrence at issue); *CH2M Hill Eng'rs, Inc. v. Springer*, No. 09-16-00479-CV, 2017 WL 6210837, at * 3 (Tex. App.—Beaumont Dec. 7, 2017, no pet.) (mem. op.) (concluding that the defendant failed to meet its burden of proof because, while the record contained evidence that the firm was registered with the Texas Board of Professional Engineers, the record did not contain any evidence that a licensed or registered professional practiced within the defendant firm). We disagree that these courts held that registration is irrelevant simply because each defendant's evidence was legally insufficient in those cases to show that a licensed professional practiced within the firm.

Regardless, in the present case, our conclusion does not turn on whether the trial court considered that Superior is not registered with the Texas Board of Professional Engineers. Superior had the burden to bring forth a record showing that it is a "firm in which [a] licensed or registered professional practices" under the statute in order to obtain a dismissal for Kallus's failure to file a certificate of merit.

–15–

The trial court did not abuse its discretion in concluding that Superior is a manufacturer and distributor who has not demonstrated that the few licensed engineers that it employed actually practiced engineering, especially related to the telestacker at the time of its manufacture.

We conclude that Superior has not met its burden to show that the trial court abused its discretion to the extent it found that Superior did not prove it was a licensed or registered professional within the meaning of the certificate-of-merit statute.

### B.    The trial court could have concluded that Superior did not prove that Kallus's claims arose out of Superior's provision of covered professional services.

Even if Superior had adduced legally or factually sufficient evidence to require the trial court to find that it met the definition of a licensed or registered professional under the certificate-of-merit statute, the certificate requirement only applies in an action for damages "arising out of the provision of professional services" by such a licensed professional.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a).

Superior asserts that Kallus conceded at the dismissal hearing that his design defect claim implicates the certificate-of-merit requirement. However, Kallus argues, and we agree, that Kallus did not concede this point.[2]

The parties further disagree as to whether the role of Superior's unlicensed customer representative who provided repair instructions to Kallus impacts the applicability of the statute. We need not address this argument. Our conclusion is independent of the fact that the customer representative was not a licensed professional engineer.

> **1. Superior's evidence fails to prove that its licensed engineers provided engineering services out of which Kallus's claims arise.**

In its motion to dismiss, Superior argues that Kallus's claims arise out of Superior's provision of professional engineering services because "they relate to Superior's design and other work related to the design of the subject telestacker machine" manufactured by Superior. Superior asserts that it conducted the following activities that constitute the practice of engineering under the Texas Occupations Code: "'consultation, investigation, evaluation, analysis . . .,' 'engineering for preparation of an operating or maintenance manual,' 'engineering .

---

[2] At the hearing, Kallus's attorney explained that, in his experience with asserting the same types of negligence and product liability claims against many product manufacturers, he had never been met with a motion to dismiss for lack of a certificate of merit. He further opined that, in thinking about the present case, the only claim raised "that could potentially even fall under the engineering umbrella that I could see would be design defect and so I'm going to set that aside for a moment." This statement is not a concession of the point. Moreover, the trial judge later returned to the product liability design defect claim, and Kallus's counsel reiterated his position that no case law supports Superior's requested dismissal of the claims with prejudice, or even a nonsuit of the design defect claim.

. . to monitor compliance with drawings or specifications,' and 'a service, design, analysis, or other work performed for a public or private entity in connection with' the telestacker and its components."

The statute applies if the action for damages arises out of the provision of professional services by a licensed or registered professional. TEX. CIV. PRAC. & REM. CODE ANN. §150.002(a).  Merely proving that a firm engaged in the practice of engineering as defined by the Occupations Code does not imply that it is a licensed professional.  *TDIndus.,* 2014 WL 1022453, at *4.  Similarly, Superior's assertion that it engaged in activities listed in the Occupations Code does not prove that Kallus's claims arose out of the provision of professional services by a licensed professional engineer.  As discussed above, the Director's affidavit merely states that Superior employs the named engineers "[i]n connection with its work."  He does not state that any of them actually practice engineering in their jobs at Superior or that any provided professional engineering services with respect to the telestacker and its braking system at the relevant times.  *See, e.g., FAI Eng'rs*, 2020 WL 7252315, at *3.

In its reply to its motion to dismiss, Superior also argued that the listed patents demonstrate that Kallus's claims "directly implicate the work performed by the licensed professional engineers that patented the machine."  A list of purported patents of varying age with no evidence explaining the relevance of the patents to the components of the telestacker at issue in this case fails to demonstrate that the

–18–

trial court abused its discretion in finding that Superior did not prove that Kallus's claims arose from the provision of professional engineering services by licensed professional engineers at Superior.

In its reply brief on appeal, Superior further asserts that "whether Superior actually provided professional services in connection with its design, manufacturing, marketing, service, and analysis of the telestacker is irrelevant to the determination of whether section 150.002(a) required [Kallus's] complaint to be dismissed as against Superior." We reject Superior's argument that whether Superior actually provided professional engineering services relating to the telestacker is irrelevant under the statute. In fact, when a certificate of merit is required, the affidavit of the third-party professional must set forth, for each theory of recovery, the actions, errors or omissions "of the licensed or registered professional in providing the professional service." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(b). In other words, the statute requires the plaintiff to show, for each claim, how the licensed professional engineer erred in the professional engineering services that were provided. In construing statutes, "we endeavor to read statutes contextually to give effect to every word, clause, and sentence." *Melden & Hunt*, 520 S.W.3d at 893. The certificate of merit is required when professional services were provided, and the claims arise out of the professional services provided by the licensed professional. To hold otherwise would eliminate the statute's requirement of a link

between the professional services provided, the claimant's causes of action, and the claimed damages that arose from the provision of professional services.

The pleadings in this case allege product liability and negligence claims relating to the defective design, marketing, and manufacture of unsafe equipment by a manufacturer. We conclude that the trial court could have determined that Superior did not meet its burden to prove that Kallus's product liability and manufacturer negligence claims arose out of the provision of professional engineering services by licensed professional engineers at Superior.

### 2. Superior's cases involving product liability or other claims are distinguishable.

Superior cites a few cases where plaintiffs filed certificates of merit in support of product liability and related negligence or other claims. However, the defendants in the cases Superior cites were professional engineering firms rather than product manufacturers, or were licensed, professional engineering firms that also manufactured products. *See T & T Eng'g Servs., Inc. v. Danks*, No. 01-21-00139-CV, 2022 WL 3588718, at *1 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, pet. denied) (mem. op.) (holding plaintiff's certificate of merit complied with statutory requirements in a strict product liability and negligence case against professional, licensed engineering firm that allegedly designed, fabricated or manufactured a defective oil rig); *AMEC*, 2020 WL 3579567, at *1 (evaluating whether a certificate of merit was required in a case alleging product liability, negligence, and breach of implied warranty of merchantability claims against licensed professional

–20–

engineering firm relating to its engineering design and technology of a filter system at a refinery).

In *AMEC*, one of the primary cases Superior cites, the plaintiffs sued an engineering firm alleging design, manufacturing, and marketing defect claims, negligence claims, and breach of implied warranty of merchantability for injuries caused by hot steam that sprayed from a sour water pump system. *AMEC*, 2019 WL 3949466, at *1. The engineering firm was registered in Texas to offer and perform engineering services and had a contract to perform engineering work at the plant. *Id.* at *2, 6. The Houston court determined that a certificate of merit was required because the plaintiffs' claims arose out of the provision of professional engineering services based on their contention that the engineering firm was "negligent in the design, manufacture, and marketing of the sour water pump ('system')" and the allegation that plaintiffs "relied on [the engineering firm's] *skill and judgment* to furnish a suitable system that was fit for the ordinary purpose for which it was used (emphasis in original)." *Id.* at *4. The court concluded, "If the cause of action is based on a breach of the standard of care by a professional engineering company, then the claim 'arose out of the provision of professional [engineering] services[,]' without regard to how it is labeled." *Id.* *AMEC* is distinguishable from the present case not only because it involved a registered, professional engineering firm, but

also because the plaintiff expressly alleged a breach of a professional engineering standard of care.[3]

Under Superior's broad reading of the statute, a claimant would be required to obtain a certificate of merit to initiate, for example, a design defect claim against any product manufacturer that is not in the business of providing engineering services but that employs even one licensed professional. Claimants would be expected to ascertain, without discovery, whether a defendant company employs a licensed engineer. As a result, claimants would have to err on the side of obtaining and filing a certificate of merit with every complaint alleging any design defect or other claim against a company that might employ an engineer, or risk dismissal of a meritorious claim based on a procedural defect. Superior has not cited, and we have not found, any Texas authority supporting that interpretation. *Cf. TIC N. Cent. Dall. 3, L.L.C.*, 463 S.W.3d at 80 n.5 (holding that claims against an architecture firm were not based on actions of the firm relating to the practice of architecture, and noting the overall purpose of the statute to deter meritless claims and the problem with a

---

[3] In the present case, Kallus does not assert professional negligence claims or similar claims invoking a heightened professional duty of care. Although we do not conclude that a professional standard of care necessarily must be pleaded in order for the certificate-of-merit statute to apply, we note that in certain cases courts have held the statute inapplicable where the plaintiff's claims did not implicate a higher standard of professional care. *See TIC N. Cent. Dall. 3, L.L.C. v. Envirobusiness, Inc.*, 463 S.W.3d 71, 79 (Tex. App.—Dallas 2014, pet. denied) (concluding that claims against architecture firm did not arise out of its provision of professional services and that the plaintiff did not allege that the architecture firm "should be subject to a higher standard of care because of its professional expertise or otherwise base its claims on any violation of professional standards."); *Jacobs*, 502 S.W.3d at 465 (concluding that a certificate of merit was not required because the plaintiffs' allegations of negligence and gross negligence invoked the duties arising from the employment relationship, "not from any professional relationship giving rise to a heightened duty of care owed by a professional engineer").

broad reading of the statute that "could forever bar a plaintiff's suit even if the plaintiff was not aware of, and had no reason to be aware of, the defendant's professional expertise").

We conclude that Superior has not shown that it was unreasonable or arbitrary for the trial court to determine that Superior did not meet its burden to prove that Kallus's claims arose out of Superior's provision of professional engineering services by a licensed professional engineer under the certificate-of-merit statute.

## V. Conclusion

Superior has failed to demonstrate that the trial court acted in an unreasonable or arbitrary manner without reference to any guiding rules or principles when it applied the certificate-of-merit statute to the facts in this case. Consequently, the trial court did not abuse its discretion in denying Superior's motion to dismiss. We affirm the trial court's judgment.

/Emily Miskel/

230219f.p05

EMILY MISKEL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SUPERIOR INDUSTRIES, INC.,
Appellant

No. 05-23-00219-CV        V.

GARRETT KALLUS, Appellee

On Appeal from the 116th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-22-03261.
Opinion delivered by Justice Miskel.
Justices Goldstein and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee GARRETT KALLUS recover his costs of this appeal from appellant SUPERIOR INDUSTRIES, INC.

Judgment entered this 13th day of March, 2024.