**Opinion issued April 18, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00015-CV**

———————————

**DONALD BRATTON AND DONALD MALLARD, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JERVIE MALLARD, SR.,** Appellants

**V.**

**PASTOR, BEHLING & WHEELER, L.L.C. AND ENVIRONMENTAL RESOURCES MANAGEMENT SOUTHWEST, INC.,** Appellees

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-30439**

---

**MEMORANDUM OPINION ON REHEARING**

Appellee Environmental Resources Management Southwest, Inc. moved for rehearing and en banc consideration of our December 12, 2023 opinion and judgment. We deny the motion for rehearing, withdraw our opinion and judgment

of December 12, 2023, and issue this opinion and judgment in their stead. Our disposition remains the same.

We dismiss Environmental Resources Management Southwest, Inc.'s motion for en banc reconsideration of our prior opinion as moot.[1] Appellees Pastor, Behling & Wheeler, LLC and Environmental Resources Management Southwest, Inc. provided environmental engineering and geoscience services to Union Pacific Railroad Company[2] in connection with the identification and remediation of creosote and related contamination on Union Pacific's property. Appellants Donald Bratton and Donald Mallard, individually and as representative of the Estate of Jervie Mallard, Sr., sued Appellees and Union Pacific for negligence claiming creosote and other toxic chemicals on Union Pacific's property contaminated Appellants' neighborhoods. Appellees moved to dismiss Appellants' claims against them claiming Appellants failed to file a proper certificate of merit, as required by Section 150.002(a) of the Texas Civil Practice and Remedies Code. The trial court granted

---

[1] Because we are issuing a new opinion, the motion for en banc reconsideration is moot. *In re Wagner*, 560 S.W.3d 309, 312 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding) ("Because we issue a new opinion in connection with the denial of rehearing, the motion for en banc reconsideration is rendered moot."); *see also Poland v. Ott*, 278 S.W.3d 39, 41 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (stating motion for en banc reconsideration rendered moot by withdrawal and reissuance of opinion and judgment); *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 41 n.4 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (noting that motion for en banc reconsideration rendered moot when motion for rehearing granted and new opinion and judgment issue).

[2] Union Pacific Railroad Company is not a party to this appeal.

Appellees' motions and dismissed Appellants' claims against them without prejudice.

Appellants filed the present interlocutory appeal challenging the trial court's order.[3] They raise three issues on appeal. In their first issue, Appellants argue the trial court abused its discretion in dismissing their claims because their claims against Appellees do not relate to professional engineering services and thus, they were not required to file a certificate of merit under Section 150.002(a). In their second and third issues, Appellants argue that even if they were required to file a certificate of merit, the trial court abused its discretion in dismissing their claims because (1) Appellees engaged in substantial litigation thus waiving their right to object to the certificate of merit, and (2) the certificate of merit satisfied the statutory requirements of Section 150.002(a).

Because we conclude the certificate of merit met the requirements of Section 150.002(a), we hold the trial court abused its discretion in dismissing Appellants' claims. We reverse the trial court's orders granting Appellees' motions to dismiss and dismissing Appellants' claims, and we remand this case to the trial court for further proceedings.

---

[3]    *See* TEX. CIV. PRAC. & REM. CODE § 150.002(f) ("An order granting or denying a motion for dismissal is immediately appealable as an interlocutory order.").

## Background

On May 21, 2021, Appellants Donald Bratton and Donald Mallard, individually and as representative of the Estate of Jervie Mallard, Sr., sued Union Pacific and Appellees Pastor, Behling & Wheeler, LLC ("PBW") and Environmental Resources Management Southwest, Inc. ("ERM") for negligence. Appellants alleged that each defendant was liable vicariously for the negligence of its employees under the doctrine of respondeat superior. Appellants, who are current and former residents of Kashmere Gardens and the Fifth Ward, alleged that their residential neighborhoods had been contaminated with creosote and other toxic chemicals emanating from Union Pacific's Englewood Rail Yard. Appellants alleged they suffered physical injuries, including cancer and death, because of "the exposure to creosote and toxic chemicals used, stored, managed, and improperly dumped" at the rail yard.

Among other things, Appellants alleged "Union Pacific and its consulting geologists, ERM and PBW, failed to properly test, remediate, and/or warn of the real risks of creosote exposure to the residents of Kashmere Gardens and Fifth Ward." According to Appellants, ERM's and PBW's "delays and half measures to remediate this problem directly caused the continued spread of an underground plume of creosote sludge known as a dense non-aqueous phase liquid ("DNAPL"). The heavy nature of DNAPL causes it to sink into the ground and spread outward to the

4

surrounding groundwater, soil, and air far beyond the property line of the Rail Yard. This process is ongoing and continuous."

Appellants further alleged that Union Pacific, ERM, and PBW breached their duties to them in a number of ways, including by failing to (1) "take reasonable steps to prevent and/or mitigate air, soil, and water contamination caused by creosote and toxic chemicals known to be hazardous to human health," (2) "properly monitor and test for air, soil, and water contamination caused by creosote and toxic chemicals known to be hazardous to human health," (3) "protect [Appellants] from the harmful effects of exposure to creosote and toxic chemicals," (4) "prevent creosote and toxic chemicals from permeating ground water and creating a creosote DNAPL beneath residential properties," and (5) "take timely and reasonable steps to contain the creosote DNAPL and mitigate the risks to human health posed by the creosote DNAPL."

Pursuant to Section 150.002(a) of the Texas Civil Practice and Remedies Code, Appellants filed a certificate of merit prepared by their expert Dr. Philip Bedient together with the filing of their original petition. In the certificate of merit, Dr. Bedient states that ERM and PBW were hired by Union Pacific "to provide engineering services in connection with the identification and remediation of creosote contamination" at a rail yard near Kashmere Gardens in east Harris County

that contains a creosote wood treatment plant operated by Union Pacific and its predecessors (the "Facility"). Dr. Bedient states:

> This site was a creosote wood treatment plant operated by Union Pacific from at least 1950 to 1985 and located in the Rail Yard. For decades, millions of gallons of creosote were heated in open air vats and ditches and dumped at the Rail Yard, which directly caused the contamination of Kashmere Gardens, including the Plaintiffs' properties (see **Figure 1).** For years Union Pacific and its consultants ERM and PBW failed to address, remediate, and/or warn of the real risks of creosote exposure. Soil samples and monitoring wells in the Rail Yard, Kashmere Gardens, and the Fifth Ward continue to test positive for unsafe levels of creosote and toxic chemicals. UPRR, under the guidance of ERM and PBW, has applied for permits through the Texas Commission on Environmental Quality ("TCEQ") to "clean up" portions of the creosote and toxic chemicals. However, Defendants' delays and half measures to remediate this problem directly caused the continued spread of an underground plume of creosote sludge known as a dense non-aqueous phase liquid ("DNAPL"). The heavy nature of the DNAPL causes it to sink into the ground and spread outward to the surrounding groundwater, soil, and air far beyond the property line of the Rail Yard. This process is ongoing and continuous.

Dr. Bedient provides specific examples of ERM's and PBW's "delays and half measures to remediate this problem," which Dr. Bedient asserts "directly caused the continued spread" of DNAPL.

According to Dr. Bedient, engineers from ERM and PBW "failed to develop a reasonably reliable Conceptual Site Model (CSM) that captures the key hydrogeologic features of the site and the major routes of chemical exposure to the adjacent community" of Kashmere Gardens. Dr. Bedient opines that a CSM that "reasonably represent[s] the key hydrogeologic features of the site" is necessary "in

6

order to develop an appropriate remediation plan" for the Facility and the "development and refinement of a reasonably reliable CSM is a key step in the regulatory process." Dr. Bedient further contends that the CSM should "evolve as data [is] collected overtime" and the "CSM should also serve as a platform for systematically identifying and closing data gaps and moving the remediation processes forward." But, according to Dr. Bedient,

> In the work of ERM and PBW, their CSM is static and does not appear to have changed to any degree since the mid-1990's, even though additional data was collected showing their CSM was not accurately representing the key hydrogeologic features of the site and exposure routes to the surrounding areas.

Dr. Bedient states:

> As an example, the engineers' CSM was developed, and has been maintained, as a grossly oversimplified and incorrect representation of the site hydrogeology. In reports submitted to the Texas Council of Environmental Quality (TCEQ), ERM and PBW have characterized the subsurface at the site and adjacent areas as a "layered cake" with three distinct transmissive zones (termed A-TZ, B-TZ, and C-TZ) separated by distinct layers of clays and silty clays that are significantly less permeable (see **Figure 2** showing the engineers' CSM and its distinct layers).

Figure 2, attached to and referenced in Dr. Bedient's certificate of merit, is a CSM prepared by PBW.[4] Dr. Bedient also states:

> This gross misrepresentation in their CSM remained, even after regular data collection of groundwater flow direction, potentiometric

---

[4] Dr. Bedient identifies Figure 2 as a "CSM showing 'Layered Cake' Hydrogeology Under Site."

7

elevations and cone penetrometer testing (CPT) data showed at a minimum that the A-TZ and B-TZ zones are clearly connected by having the same potentiometric surface (see **Figure 3** showing the same potentiometric elevations in zones A-TZ and B-TZ).

Figure 3, also attached to and referenced in Dr. Bedient's certificate of merit, is a document created by ERM, which according to Dr. Bedient, demonstrates that the subsurface at the Facility and adjacent areas was not separated by layers, as ERM and PBW asserted in their reports submitted to TCEQ.

Dr. Bedient explains:

In the absence of a reliable CSM of the subsurface, the key steps needed to understand how to close the site are severely hampered. These include the effectiveness of remedial decisions for site closure and assessing routes of exposure to the adjacent community. These tools and models are not new and represent the standard of care for sites with contaminated groundwater. The absence of a reasonably accurate and refined CSM supported by quantitative data from the beginning is a clear failure by these firms, which has continued for decades after this process began.

Dr. Bedient asserts that ERM and PBW failed to (1) "fully identify additional areas of potential contamination, such as the Englewood Intermodal Yard, in order to develop an appropriate remediation plan," (2) "characterize, assess and develop a plan to mitigate dense non-aqueous phase liquids (DNAPL) at the site as required by [Texas Risk Reduction Program]," and (3) "establish the full extent of community impacts or develop actions to completely stop those releases."

ERM and PBW objected to Dr. Bedient's certificate of merit and moved to dismiss Appellants' claims against them under Section 150.002(e) of the Texas Civil

Practice and Remedies Code based on Appellants' alleged failure to file a proper certificate of merit. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(e) ("A claimant's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant. This dismissal may be with prejudice.").[5] ERM and PBW argued that Dr. Bedient's certificate of merit was insufficient under Section 150.002(a) because in it, Dr. Bedient made collective assertions of negligence by ERM and PBW, rather than separating the errors and omissions attributable to ERM from those attributable to PBW. ERM and PBW also criticized the sources on which Dr. Bedient based his opinions, questioning the credibility and reliability of his opinions. ERM and PBW also argued that Dr. Bedient could not provide a factual basis for his allegations against them because he had not reviewed ERM's and PBW's contracts with Union Pacific and thus did not know the scope of their work for Union Pacific.

PBW argued Dr. Bedient had not conducted an independent investigation of the relevant facts as evidenced by the fact his certificate of merit was not supported by the materials on which Dr. Bedient relied and the numerous factual errors contained in his certificate. According to PBW, Dr. Bedient's failure to conduct an independent investigation indicated he was acting more as Appellants' agent for

---

[5] The affidavits required by Section 150.002 are also referred to as certificates of merit. *See* TEX. CIV. PRAC. & REM. CODE § 150.002 ("Certificate of Merit").

purposes of the certificate of merit rather than a "third-party . . . licensed professional engineer," as required by Section 150.002(a).

After conducting a hearing on Appellees' motions to dismiss, the trial court granted their motions and dismissed Appellants' claims, without prejudice.

This interlocutory appeal followed.

## Certificate of Merit

In their first issue, Appellants argue the trial court abused its discretion in granting PBW's and ERM's motions to dismiss because their claims against Appellees do not relate to professional engineering services and thus they were not required to file a certificate of merit under Section 150.002(a). In their second and third issues, Appellants argue the trial court abused its discretion in dismissing their claims because even if they were required to file a certificate of merit (1) PBW and ERM engaged in substantial litigation thus waiving their rights to object to the certificate of merit, and (2) Dr. Bedient's timely filed certificate of merit satisfied the requirements of Section 150.002(a).

Because it is dispositive, we address Appellants' third issue first.

### A.     Applicable Law

When a plaintiff sues for damages arising out of the provision of professional services by a licensed or registered professional, Section 150.002(a) of the Texas Civil Practice and Remedies Code requires the plaintiff to file a certificate of merit

with the petition. TEX. CIV. PRAC. & REM. CODE § 150.002(a). The certificate of merit must be an affidavit from a third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor who (1) is competent to testify, (2) holds the same professional license or registration as the defendant, (3) practices in the area of practice of the defendant, and (4) offers testimony based on the person's knowledge, skill, experience, education, training, and practice. *Id.*

The certificate of merit need not address the elements of the plaintiff's various theories or causes of action. *Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 894 (Tex. 2017). "The statute instead obligates the plaintiff to get an affidavit from a third-party expert attesting to the defendant's professional errors or omissions and their factual basis." *Id.* The trial court then determines whether the certificate sufficiently demonstrates that the plaintiff's petition is not frivolous. *Id.*

The purpose of Section 150.002 is to deter plaintiffs from filing frivolous claims by identifying and disposing of such claims at the outset of litigation. *See LaLonde v. Gosnell*, 593 S.W.3d 212, 216 (Tex. 2019) ("The certificate-of-merit requirement is a substantive hurdle that helps ensure frivolous claims are expeditiously discharged."). The function of a certificate of merit "is to provide a basis for the trial court to determine merely that the plaintiff's claims are not

11

frivolous" and thus the plaintiff may "proceed in the ordinary course to the next stages of litigation." *CBM Eng'rs, Inc. v. Tellepsen Builders, L.P.*, 403 S.W.3d 339, 346 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

> Section 150.002(b) states that a certificate of merit
>
> shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim

TEX. CIV. PRAC. & REM. CODE § 150.002(b). But at this preliminary stage, a plaintiff is not required to marshal its evidence or provide the full range of information a defendant is entitled to obtain through formal discovery. *See Melden & Hunt, Inc.*, 520 S.W.3d at 896–97; *Dunham Eng'g, Inc. v. Sherwin-Williams Co.*, 404 S.W.3d 785, 795 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (stating "at the certificate-of-merit stage, before discovery and before other dispositive motions are available, the plaintiff is not required to fully 'marshal his evidence'"); *CBM Eng'rs*, 403 S.W.3d at 346 ("The statute does not require a plaintiff to marshal his evidence or provide the full range of information that the defendant is entitled to obtain through formal discovery."). Rather, Section 150.002 "reflects a legislative goal of requiring merely that plaintiffs make a threshold showing that their claims have merit." *M–E Eng'rs, Inc. v. City of Temple*, 365 S.W.3d 497, 504 (Tex. App.—Austin 2012, pet. denied).

12

A claimant's failure to file a certificate of merit in accordance with Section 150.002(a) "shall result in dismissal of the complaint against the defendant." TEX. CIV. PRAC. & REM. CODE § 150.002(e). "This dismissal may be with prejudice." *Id.* "Absent a properly filed certificate of merit, professionals have the right to avoid litigation entirely." *LaLonde*, 593 S.W.3d at 220; *see also CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 390 S.W.3d 299, 301 (Tex. 2013) (noting that statute provides for dismissal as sanction "to deter meritless claims and bring them quickly to an end").

## B. Standard of Review

We review a trial court's order on a motion to dismiss under Section 150.002 for abuse of discretion. *TRW Eng'rs, Inc. v. Hussion St. Bldgs., LLC*, 608 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *see Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 493–95 (Tex. 2017) (discussing trial court's discretion to grant dismissal with or without prejudice). "A court abuses its discretion if it fails to analyze or apply the law correctly," and when it makes decisions in an arbitrary or unreasonable manner, without reference to guiding rules or principles. *TRW Eng'rs*, 608 S.W.3d at 319; *see Pedernal Energy*, 536 S.W.3d at 492.

13

## C. Sufficiency of Dr. Bedient's Certificate of Merit

Appellees do not dispute that Dr. Bedient (1) is competent to testify, (2) holds the same professional license or registration as the Appellees, (3) practices in the same area of practice as the Appellees, and (4) offers testimony based on his knowledge, skill, experience, education, training, and practice. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(a). Rather, ERM and PBW argue Dr. Bedient's certificate of merit does not comply with Section 150.002(a) because Dr. Bedient makes collective assertions of negligence by ERM and PBW. Appellants argue Section 150.002(b) requires Dr. Bedient to distinguish the errors and omissions attributable to ERM from those attributable to PBW. PBW also argues that the certificate of merit is insufficient because Dr. Bedient failed to conduct an independent investigation of the relevant facts. He was thus acting more as Appellants' agent, and not a "third-party . . . licensed professional engineer" as required by Section 150.002(a).

Appellants respond that Dr. Bedient's certificate of merit is sufficient because ERM and PBW both failed to correct the errors and omissions Dr. Bedient raised in his certificate of merit, and both ERM and PBW are "guilty of these errors and omissions."

14

### 1. Collective Assertions of Negligence

Section 150.002(b) requires a certificate of merit to "set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim." TEX. CIV. PRAC. & REM. CODE § 150.002(b).

"[S]ection 150.002(b) 'does not allow for collective assertions of negligence' in the certificate of merit." *T & T Eng'g Servs., Inc. v. Danks*, No. 01-21-00139-CV, 2022 WL 3588718, at *7 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, pet. denied) (mem. op.) (quoting *Robert Navarro & Assocs. Eng'g, Inc. v. Flowers Baking Co. of El Paso, LLC*, 389 S.W.3d 475, 482 (Tex. App.—El Paso 2012, no pet.)); *Macina, Bose, Copeland & Assocs. v. Yanez*, No. 05-17-00180-CV, 2017 WL 4837691, at *7–8 (Tex. App.—Dallas Oct. 26, 2017, pet. dism'd) (mem. op.) (holding trial court abused its discretion by not dismissing claims against two defendants because certificate of merit "did not distinguish between the acts, omissions, and errors of each defendant but collectively assigned the negligence and errors to both of them"). Instead, the certificate of merit should specifically address "the conduct of the professional who provided the service at issue," and "identify each defendant and that defendant's specific conduct." *T & T Eng'g Servs.*, 2022

15

WL 3588718, at *7 (quoting *Fluor Enters., Inc. v. Maricelli*, No. 09-19-00121-CV, 2020 WL 2070257, at *5 (Tex. App.—Beaumont Apr. 30, 2020, pet. denied) (mem. op.)). "In a case involving multiple defendants, the court must be able to 'determine which acts or omissions should be ascribed to which company,' or the certificate of merit should opine that 'both companies were involved in all aspects of the work.'" *T & T Eng'g Servs.*, 2022 WL 3588718, at *7 (quoting *Macina*, 2017 WL 4837691, at *6). Thus, a certificate of merit may make collective assertions of negligence where it is alleged the defendants were involved in all aspects of the work at issue. *See Res. Planning Assocs., LLC v. Sea Scout Base Galveston & Point Glass, LLC*, No. 01-19-00965-CV, 2021 WL 1375797, at *16–17 (Tex. App.—Houston [1st Dist.] Apr. 13, 2021, pet. denied) (mem. op.) (holding certificate of merit sufficient when certificate contained "numerous alleged acts and omissions with respect to the design drawings, and [expert] specified in his affidavit that *both RPA and Shipley sealed* the documents") (emphasis in original).").

ERM and PBW argue Dr. Bedient did not assert in his certificate that ERM and PBW were involved in all aspects of the work, and he could not do so credibly because ERM and PBW provided engineering services to Union Pacific at different

16

times, for different phases of the remediation project, and submitted separate reports to the regulatory agencies.[6]

In his certificate of merit, Dr. Bedient states that Union Pacific hired ERM and PBW as consultants to "provide engineering services in connection with the identification and remediation of creosote contamination" at the Facility, a process which began in the mid-1990s. Dr. Bedient states that ERM and PBW were negligent with respect to their obligations to prepare an accurate CSM for the Facility because, among other things, ERM and PBW "failed to develop a reasonably reliable [CSM] that captures the key hydrogeologic features of the site and the major routes of chemical exposure to the adjacent community" of Kashmere Gardens and "these engineers also failed to update and refine their CSM as more data was collected that showed the need for such refinement." Although Dr. Bedient refers to ERM and PBW collectively when addressing the acts and omissions of negligence with respect to the CSM, Dr. Bedient states in his certificate of merit that PBW and ERM were both responsible for the preparation and maintenance of an accurate CSM for the Facility and that each failed in several respects in preparing an adequate CSM. Dr. Bedient specifically stated that "[t]he absence of a more realistic CSM has been the

---

[6]     During the hearing on Appellees' motions to dismiss, PBW's counsel stated:

> ERM was there from '97 to 2005 or '6. [PBW was] there from 2006 to the current day. We did not work together. There is no way that we could both have been involved in all aspects of the project.

17

responsibility of these 2 engineering firms for decades." *See Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.*, 513 S.W.3d 487, 494 (Tex. 2017) (stating courts may draw inferences from record and affidavit when assessing sufficiency of certificate of merit).

Even if those statements were insufficient under Section 150.002, Dr. Bedient's certificate of merit also identifies a specific act or omission attributable to PBW and a specific act or omission attributable to ERM. According to Dr. Bedient's certificate of merit, PBW and ERM were both responsible for preparing a "realistic" and "reasonably accurate" CSM for the Facility, and each failed in that respect. He explains that "[t]he absence of a reasonably accurate and refined CSM supported by quantitative data from the beginning is a clear failure by these firms, which has continued for decades after this process began." "In the work of ERM and PBW, their CSM is static and does not appear to have changed to any degree since the mid-1990's, even though additional data was collected showing their CSM was not accurately representing the key hydrogeologic features of the site and exposure routes to the surrounding areas." Citing to a CSM prepared by PBW,[7] Dr. Bedient states the CSM erroneously characterizes the subsurface of the Facility and adjacent areas as "a 'layered cake' with three distinct transmissive zones . . . separated by

---

[7]    The CSM, which Dr. Bedient identifies as Figure 2, is attached to his certificate of merit.

18

distinct layers of clays and silty clays that are significantly less permeable." According to Dr. Bedient, this is a "gross misrepresentation" of the subsurface because "data showed at a minimum that [two of the transmissive] zones are clearly connected by having the same potentiometric surface." The data allegedly showing the interconnectedness of the two transmissive zones was prepared by ERM. Stated otherwise, PBW erroneously characterized the subsurface at the site and adjacent areas as having distinct and separate layers, as set forth in the CSM prepared by PBW, and PBW continued to mischaracterize the subsurface despite knowing that at least some of the layers were connected.

Dr. Bedient's certificate of merit identifies a similar act or omission attributable to ERM. According to Dr. Bedient, ERM, which was also responsible for preparing a "realistic" and "reasonably accurate" CSM for the Facility, failed to update the CSM after learning the characterization of the subsurface as having distinct, separate layers was inaccurate. Dr. Bedient explains that a document prepared by ERM, attached to his certificate of merit,[8] demonstrates that two of the transmissive zones were in fact connected. Dr. Bedient also identifies the factual basis supporting his allegations against ERM and PBW, identifying specifically the reports ERM and PBW submitted to TCEQ and the documents PBW and ERM each

---

[8] The ERM document, which Dr. Bedient identifies as Figure 3, is attached to his certificate of merit.

prepared, Figures 2 and 3, respectively. *See T & T Eng'g Servs.*, 2022 WL 3588718, at *7 (stating certificate of merit should identify professional errors or omissions and factual basis for each defendant or state all defendants were involved in every aspect of work).

PBW argues that Dr. Bedient's assertions of collective negligence prevents it from knowing what specific errors, actions, or omissions Dr. Bedient attributes to PBW, as opposed to ERM. But PBW's motion to dismiss and its appellate briefing suggest otherwise. In its motion to dismiss and appellate brief, PBW states that although "[Dr. Bedient] criticizes PBW for not having employed 'visualization and mapping using common tools such as 'EarthVision™ and Rockware™,'" this statement is "demonstrably incorrect" because PBW conducted a visualization and mapping study at the Facility using a tool similar to EarthVision™ and Rockware™, and it provided the results of the study to TCEQ in August 2020. PBW also argues:

> In Paragraph 6, [Dr. Bedient] states that the CSM developed for the Facility is "static and does not appear to have changed to any degree since the mid-1990's." But several reports in TCEQ's records reflect PBW frequently updated the elements of the CSM as additional hydrogeologic data became available.

In its motion to dismiss, PBW also provided "a list of the reports where PBW submitted data reflecting revisions [to] the critical elements of the CSM." PBW also acknowledged that Dr. Bedient:

> asserts that PBW "failed to develop and refine a conceptual site model," "failed to fully identify additional areas of potential contamination,"

20

"failed to characterize, assess and develop a plan to mitigate dense non-aqueous phase liquids (DNAPL) at the site," and "failed to establish the full extent of community impacts or develop actions to completely stop those releases."

PBW was thus able to understand at least some of the errors or omissions Dr. Bedient attributed directly to PBW sufficiently enough to challenge the accuracy of the allegations.

ERM argues that the holding in *Macina, Bose, Copeland & Assocs. v. Yanez* ("*Macina*") dictates we affirm the dismissal of Appellants' claims. No. 05-17-00180-CV, 2017 WL 4837691, at *9 (Tex. App.—Dallas Oct. 26, 2017, pet. dism'd) (mem. op.). ERM argues that in that case, the court squarely addressed a certificate of merit that made collective allegations of negligence nearly identical to those in Dr. Bedient's certificate, holding the certificate failed to comply with Section 150.002. *Id.* We find the facts of *Macina* distinguishable.

In *Macina*, two architecture firms and three engineering firms were hired to construct an apartment complex. Erika Yanez sued all five firms for negligence and gross negligence after her husband suffered serious injuries while working at the construction site. The architecture firms objected to Yanez's certificate of merit because it "did not differentiate between the [architectural firms'] actions." *Id.* at *5. The certificate of merit defined the two architecture firms collectively as "the Defendant Architectural Firms" or "Defendant Architects." Among other allegations, Yanez's expert asserted the "Defendant Architects' conduct in

21

developing, approving, designing, assessing and documenting . . . fell below the applicable work product standards of design professionals in Texas." *Id.* at \*6. The appellate court determined the certificate of merit provided no basis for ascribing the alleged acts to one of the companies because it made "no distinction in the work performed by the two companies," and failed to state that "both companies were involved in all aspects of the work." *Id.* The court held the certificate of merit did not satisfy Section 150.002's requirements. *Id.* at \*6–8. Unlike the certificate of merit in *Macina*, Dr. Bedient's certificate of merit makes a distinction between the work performed by ERM and PBW both by discussing and attaching documents created by each defendant and referring to each defendant separately. There is no indication the defendant's expert in *Macina* did the same.

Regardless, we find this Court's binding opinion in *T & T Engineering Services, Inc. v. Danks*, No. 01-21-00139-CV, 2022 WL 3588718 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, pet. denied) (mem. op.) more on point. In *T & T Engineering Services*, the plaintiff was injured while working on a drilling rig allegedly designed, fabricated, or manufactured by T&T Engineering and Basic Equipment. *Id.* at \*1. The plaintiff sued T&T Engineering and Basic Equipment for strict products liability and negligence. *Id.* at \*8. T&T Engineering objected to the plaintiff's certificate of merit and moved to dismiss the plaintiff's claims. Among other things, T&T Engineering argued the certificate of merit "failed to identify the

22

particular defendant at fault or the specific conduct by T&T Engineering that contributed to [the plaintiff's] injuries." *Id.* at \*2. The trial court denied T&T Engineering's motion to dismiss, and T&T Engineering appealed. *Id.*

This Court observed that "the certificate of merit did not specifically state the alleged negligence of T&T Engineering as opposed to that of Basic Equipment" or "expressly state that both T&T Engineering and Basic Equipment were involved in all aspects of the work performed." *Id.* at \*8. We explained the certificate of merit instead:

> grouped both defendants together and attributed the alleged failures in the design and installation of the derrick board to both defendants without stating which defendant was responsible for which acts or omissions, or if they were both responsible for all acts and omissions. There was, therefore, no way for the trial court to determine, based on the face of the certificate of merit, "which acts or omissions should be ascribed to which company."

*Id.* (citing *Macina*, 2017 WL 4837691, at \*6). We noted, however, that "T&T Engineering [had] unequivocally acknowledged in the record before the trial court that it [had] designed the drilling rig and the derrick board" the plaintiff's expert opined was defective, and that the certificate of merit identified the "alleged flaw[s] in the design of the drilling rig." *T & T Eng'g Servs.*, 2022 WL 3588718, at \*9. We thus held that the "certificate of merit identifie[d] the alleged error and state[d] the factual basis for [the expert's] conclusions" and thus "provide[d] a basis for the trial court to conclude that [the plaintiff's] claims [were] not frivolous." *Id.* at \*10.

23

Apart from the errors and omissions associated with the CSM, Dr. Bedient states in his certificate of merit that ERM and PBW each failed to (1) "fully identify additional areas of potential contamination, such as the Englewood Intermodal Yard, in order to develop an appropriate remediation plan," (2) "characterize, assess and develop a plan to mitigate dense non-aqueous phase liquids (DNAPL) at the site as required by [Texas Risk Reduction Program]," and (3) "establish the full extent of community impacts or develop actions to completely stop those releases."

In its motion to dismiss, ERM acknowledged that Union Pacific hired ERM in 1997 "to provide certain environmental consulting and engineering services at the Facility," and as Union Pacific's environmental consultant and engineer

> ERM was regularly engaged in the practice of environmental engineering and was required to exercise its employees' engineering education, training, and experience to perform tasks necessary pursuant to [Union Pacific]'s permit, including sampling, analysis, and delineation of specified constituents of concern; analysis related to the conceptual site model; evaluation of exposure pathways or lack thereof; design of remedial action; and the like. ERM continued to provide environmental engineering services to [Union Pacific] until 2006, when PBW replaced ERM as [Union Pacific]'s environmental consultant and engineer at the Facility. PBW is still the environmental consultant and engineer at the Facility.

And in its motion to dismiss, PBW stated:

> PBW undertook a visualization and mapping study at the Facility using "Earth Volumetric Studio" ("EVS") to develop a three-dimensional visualization model of the Facility hydrogeology, EVS is a tool similar to the ones that Dr. Bedient identified as appropriate for projects like this one. PBW provided the results of the EVS study it performed at:

24

the Facility to TCEQ in August 2020 in a document entitled "Response Action Plan - Revision No. 5."

PBW argued that contrary to Dr. Bedient's assertions, PBW "frequently updated the elements of the CSM as additional hydrogeologic data have become available," and "conducted detailed investigations of the Englewood Intermodal Yard and reported the results to TCEQ (including the identification of the Englewood Intermodal Yard as an [area of concern]) in several reports." PBW argued that it "collected DNAPL samples as early as 2007 on behalf of Union Pacific to evaluate the chemical and physical characteristics of the NAPL at the Facility," "conducted DNAPL recovery tests on selected wells . . . to evaluate recoverable characteristics of the NAPL," and submitted a report detailing the "comprehensive NAPL investigations that PBW conducted at the Facility in 2019 and 2020." According to PBW, "[n]umerous reports and other documentation that describe PBW's plans to mitigate NAPL migration from the Facility were available to Dr. Bedient in TCEQ's records" when he prepared the certificate of merit. PBW also asserted that it performed soil investigations at the Facility.

Thus, as in *T & T Engineering Services*, the record reflects ERM and PBW both acknowledge in their motions to dismiss that they were responsible for one or more aspects of the remediation project Dr. Bedient addresses and criticizes in his certificate of merit, such as the preparation and refinement of the CSM, the design of remedial action, or the evaluation and identification of evaluation of exposure

25

pathways. Dr. Bedient's certificate of merit thus identifies specific acts or omissions by ERM and PBW, and ERM and PBW both acknowledge they were involved in such aspects of the work at the Facility. *See T & T Eng'g Servs.*, 2022 WL 3588718, at *7 (stating certificate of merit should specifically address "the conduct of the professional who provided the service at issue," and "identify each defendant and that defendant's specific conduct") (quoting *Fluor Enters.*, 2020 WL 2070257, at *5)).

We thus conclude the certificate of merit provided a basis for the trial court to conclude that Appellants' claims are not frivolous, and they may thus "proceed in the ordinary course to the next stages of litigation." *See T & T Eng'g Servs.*, 2022 WL 3588718, at *10 (quoting *CBM Eng'rs*, 403 S.W.3d at 346).

### 2. Dr. Bedient's sources and accuracy of his assertions

ERM and PBW also criticize Dr. Bedient's sources and the accuracy of his factual assertions and opinions. According to ERM and PBW, the certificate of merit simply repeats allegations the Harris County attorney asserted in its letter to TCEQ, which according to ERM "call[s] into question the credibility and technical soundness of the certificate's allegations." ERM and PBW argue Dr. Bedient should have reviewed ERM's and PBW's relevant contracts and agreements with Union Pacific establishing their scope of work at the Facility. Without this information, they contend, Dr. Bedient cannot provide a factual basis for his assertions against

them. PBW also argues that its contract with Union Pacific demonstrates that Union Pacific "decide[d] what activities PBW would be permitted to undertake and when, and whether PBW ha[d] completed the requested work" and Union Pacific, not PBW, is the only party with "responsibility for the work performed or not performed" at the Facility as a part of the remediation project.

Even if accurate, ERM's and PBW's arguments do not alter our conclusion. The question before the trial court and before us on appeal is only whether Dr. Bedient's certificate of merit complied with Section 150.002(a). The accuracy of Dr. Bedient's opinions and the reliability of his foundational materials do not impact the sufficiency of his certificate of merit under Section 150.002, which a plaintiff must file at the onset of litigation before any discovery has occurred. Rather, such arguments, which ERM and PBW are not foreclosed from making in the future, are more appropriately raised in a motion for summary judgment or motion to exclude expert testimony.[9] *See CBM Eng'rs*, 403 S.W.3d at 346 (stating Section 150.002 does not "foreclose the defendant from later challenging the sufficiency of the plaintiff's evidence or the admissibility of an expert's opinion, such as by filing a motion to exclude expert testimony or a motion for summary judgment"); *see also*

---

[9] Indeed, the only authority PBW relies on for this proposition involves a summary judgment proceeding. *See Dukes v. Philip Johnson/Ala Ritchie Architects, P.C.*, 252 S.W.3d 586, 594 (Tex. App.—Fort Worth 2008, pet. denied) (stating "we look only to the . . . contractual agreement" to determine scope of professional's duty).

*generally Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997) ("If the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is likewise unreliable. . . A flaw in the expert's reasoning from the data may render reliance on a study unreasonable and render the inferences drawn therefrom dubious. Under that circumstance, the expert's scientific testimony is unreliable and, legally, no evidence.").

### 3. Third-Party Licensed Professional Requirement

PBW also argues Dr. Bedient's certificate of merit fails to comply with the requirement of Section 150.002(a) that the certificate be from a third-party licensed professional because Dr. Bedient is acting more as Appellants' agent. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(a). We rejected a similar argument in *Gartrell v. Wren*, No. 01-11-00586-CV, 2011 WL 6147786 (Tex. App.—Houston [1st Dist.] Dec. 8, 2011, pet. denied) (mem. op.).

In *Gartrell*, Ernest and Beverly Wren sued Joseph Gartrell for negligence and gross negligence related to Gartrell's preparation of land surveys for the Wrens. Gartell moved to dismiss the Wrens' claims pursuant to Section 150.002. *Id.* at *1. According to Gartrell, the Wrens' expert, Christopher Trusky, "was not a third-party licensed professional within the meaning of Chapter 150 because he had been employed by the Wrens and purportedly had corrected parts of the surveys he

28

criticized in his affidavit." *Id.* at *5. Rejecting Gartrell's argument, this Court stated:

> Nothing in the statute expressly precludes a third-party fact or expert witness from serving as the third-party affiant. This is consistent with the conventional and common-sense understanding of a "third party" as "[a] person who is not a party to a lawsuit, agreement or other transaction but who is usually somehow implicated in it; someone other than the principal parties." Trusky is not the plaintiff, the defendant, or an officer or agent of either. He is a person other than the principal parties to the litigation and is, therefore, a third party with respect to the lawsuit.

*Id.* (internal citations omitted).

According to PBW, Dr. Bedient is acting as Appellants' "agent," because Dr. Bedient did not conduct "an independent investigation of the facts," and instead relied on Appellants' assertions of fact and a technical comment letter the Harris County attorney submitted to TCEQ. On the contrary, Dr. Bedient states in his certificate of merit that, in addition to reviewing Appellants' draft petition and the Harris County attorney's letter, he also reviewed the reports ERM and PBW submitted to TCEQ and TCEQ Regulatory Guidance: Risk-based management of NAPL. Dr. Bedient also discusses and cites to these sources in his certificate. While Dr. Bedient's alleged reliance on Appellants' petition and the Harris County attorney's letter may raise questions about the reliability of Dr. Bedient's opinions, it does not render him an "agent" of Appellants or otherwise disqualify him from serving as "third-party" licensed professional under Section 150.002.

Further, as we have explained, the accuracy of Dr. Bedient's assertions and the appropriateness of his source material is not relevant at this initial stage of the litigation and may be raised later. *See generally CBM Eng'rs*, 403 S.W.3d at 346 (stating Section 150.002 does not "foreclose the defendant from later challenging the sufficiency of the plaintiff's evidence or the admissibility of an expert's opinion, such as by filing a motion to exclude expert testimony or a motion for summary judgment"); *T & T Eng'g Servs.*, 2022 WL 3588718, at *10 (holding certificate of merit sufficient for purposes of Section 150.002 and stating defendant could challenge sufficiency of plaintiff's evidence and admissibility of expert's opinion later in litigation).

We conclude Dr. Bedient's certificate of merit identifies the alleged errors of PBW and ERM and the factual basis for his conclusions. The certificate of merit thus provided a basis for the trial court to conclude that Appellants' claims are not frivolous, and they may thus "proceed in the ordinary course to the next stages of litigation." *Id.* at *10 (quoting *CBM Eng'rs*, 403 S.W.3d at 346).

We hold the trial court abused its discretion in granting Appellees' motions to dismiss and dismissing Appellants' claims.[10]

---

[10] Given our disposition, we need not address Appellants' first or second issues.

## Conclusion

We reverse the trial court's orders granting PBW's and ERM's motions to dismiss and dismissing Appellants' claims against PBW and ERM without prejudice. We remand this case to the trial court for further proceedings.


Veronica Rivas-Molloy
Justice


Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.